**NATIONAL FEDERATION OF FEDERAL EMPLOYEES, LOCAL 1263, Plaintiff,**

v.

**COMMANDANT, DEFENSE LANGUAGE INSTITUTE, WEST COAST BRANCH, an Agency of the United States Government, and Secretary of the United States Army, Defendants,**

and

**Federal Labor Relations Authority, Intervenor.**

No. C–79–2952 WHO.

United States District Court, N. D. California.

April 21, 1980.

Saul M. Weingarten, Seaside, Cal., for plaintiff.

Alice Daniel, Asst. Atty. Gen., Paul Blankstein, Asst. Br. Dir., Mark Chavez, Atty., U. S. Dept. of Justice, Washington, D. C., G. William Hunter, U. S. Atty., George Christopher Stoll, Asst. U. S. Atty., San Francisco, Cal., on brief, for defendants.

Robert J. Freehling, Sol., Federal Labor Relations Authority, Washington, D. C., Thomas Angelo, Regional Atty., Region 9, Federal Labor Relations Authority, San Francisco, Cal., for intervenor.

## OPINION

ORRICK, District Judge.

This case raises, for the first time in this Circuit, the question whether under

the Federal Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7101 *et seq.* ("the Act"),[1] a private party, namely the National Federation of Federal Employees, Local 1263 ("the Union"), can invoke the limited jurisdiction of a federal district court to provide injunctive relief in a labor dispute with a federal agency, namely the Defense Language Institute ("the Institute"), a division of the United States Army. The Act, which is carefully drafted to follow the statutory scheme of the National Labor Relations Act[2] ("NLRA"), expressly provides that the district court may grant injunctive relief only upon petition of the Federal Labor Relations Authority ("FLRA") when that agency has met a probable cause requirement after issuing an unfair labor practice complaint. Accordingly, the Court answers the question in the negative and dismisses the case.

I

A

The Union brought this suit against the Commandant of the Institute and the Secretary of the Army, seeking injunctive relief to require defendants to bargain over the impact of a proposed reduction in force. The Union alleged that defendants' refusal to bargain constitutes an unfair and illegal labor practice in violation of the Act and the parties' Negotiated Agreement of May 15, 1978. The FLRA intervened as a defendant.

Defendants and intervenor FLRA have moved to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that the Court lacks subject matter jurisdiction over this controversy. Their motion is premised first on the theory that the Act vests exclusive jurisdiction in the FLRA to consider in the first instance all unfair labor practice charges directed at federal agencies, with judicial review in the circuit courts of appeals.[3] They further argue that the Act gives the FLRA the sole right to apply to federal district courts for injunctive relief to restrain unfair labor practices by federal agencies.[4]

B

On August 1, 1979, the Union received oral notification of an intended reduction in force ("RIF") of faculty and staff at the Institute. On August 22, 1979, defendants issued letters to the affected employees, informing them that the RIF would be effective as of October 23, 1979. The Union received written notification of the RIF from the Acting Commandant of the Institute on September 10, 1979. On the latter date the Union made its written demand to defendants to bargain over the impact and implementation of the RIF, claiming that both the Act and the parties' Negotiated Agreement required such negotiations.[5]

On October 4, 1979, after an exchange of correspondence[6] between the parties over

1. All statutory references will be to Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101–7135, unless otherwise indicated.

2. 29 U.S.C. § 151 *et seq.*

3. 5 U.S.C. §§ 7105(a)(2), 7116, 7118, 7123.

4. 5 U.S.C. § 7123(d).

5. The Union alleged that management was required to bargain pursuant to 5 U.S.C. §§ 7106 and 7116(a)(5)–(8) and Articles VIII, Section 1, and XXI, Section 1, of the parties' Negotiated Agreement. In relevant part, Article VIII, Section 1, provides that "Subjects appropriate for negotiations between the Parties during the life of this Agreement are * * * management proposals for new or modified personnel policies, practices and matters affecting working

conditions of employees in the units which fall within the scope of authority of the Employer." Article XXI, Section 1, states in part, "[t]he Union will be given advance notice of RIF actions which will adversely affect unit employees."

6. By letter dated September 11, 1979, the Union informed defendants of its intention to file an unfair labor practice charge against management for failing to negotiate matters related to "new or modified personnel practices," subjects appropriate for bargaining under Article VIII, Section 1, of the parties' Negotiated Agreement. Defendants' responses of September 12 and 17, 1979, informed the Union that no "new or modified personnel policies" were involved in implementing the proposed RIF, as RIF procedures had already been negotiated,

the Union's demand, the Union filed with the Regional Director of the FLRA an unfair labor practices charge for injunctive relief.[7] The Union's charge reiterated its allegations that defendants' failure to engage in impact bargaining violated certain sections of the Act, specifically 5 U.S.C. §§ 7116(a)(5)–(8) and 7106(b)(2) and (3). On November 23, 1979, the Regional Director notified the Union that he declined to issue an unfair labor practice complaint. The Regional Director had concluded that the Union had waived its right to demand impact bargaining because it had knowledge of the RIF as early as August 2, 1979, but failed to make its demand until September 10, 1979. On December 7, 1979, the Union appealed the Regional Director's decision to the General Counsel of the FLRA.[8]

Before the FLRA Regional Director had acted on the Union's charge, on October 19, 1979, the Union filed the instant suit seeking both temporary and permanent injunctive relief. The Union alleged that the defendants' refusal to engage in impact bargaining violated both the Act and the parties' Negotiated Agreement. Its motions for a temporary restraining order and for preliminary injunction were denied, and the case is now before the Court on the motions of the defendants and the FLRA to dismiss the suit on the ground that the Court lacks subject matter jurisdiction.

## II

The basic question is whether Congress intended that Title VII of the Act would provide the exclusive procedures by which the Union can seek relief for the defendants' alleged refusal to engage in impact bargaining. If the statutory procedures are designed to permit agency expertise to be applied to particular problems, and if district court jurisdiction would decrease the effectiveness of the statutory design, then such statutory procedures should be considered exclusive. *Whitney National Bank v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420–21, 85 S.Ct. 551, 557–58, 13 L.Ed.2d 386 (1965); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). Congress need not expressly label the statutory procedures as exclusive. *Whitney National Bank, supra,* 379 U.S. at 422, 85 S.Ct. at 558.

The single purpose of Title VII of the Act is to "prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government." 5 U.S.C. § 7101. To accomplish this purpose, Congress created the FLRA,[9] mandating that the FLRA "shall provide leadership in establishing policies and guidance * * and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter." 5 U.S.C. §§ 7104, 7105(a)(1).

and that the Negotiated Agreement provided for a grievance procedure to resolve issues of contract interpretation.

7. This charge was filed pursuant to Part 2423 of the FLRA Interim Rules, 44 Fed.Reg. 44760 (1979) (hereinafter cited as "the Interim Rules").

8. This request for review of the Regional Director's action was filed pursuant to Section 2423.9(c) of the Interim Rules, 44 Fed.Reg. 44761 (1979). As a result of that review, the General Counsel may either sustain the refusal to issue a complaint or direct the Regional Director to take further action. Section 2423.-9(e), Interim Rules, 44 Fed.Reg. 44761 (1979); 5 U.S.C. §§ 7104(f)(2), 7118(a)(1).

9. Prior to the effective date of Title VII of the Act, labor-management relations in the federal government were governed by Executive Order

11491, as amended. Under the Order the Assistant Secretary of Labor for Labor-Management Relations had the authority to decide alleged unfair labor practice complaints, with limited review available by the Federal Labor Relations Council. The Council was the central authority administering the federal labor-management relations program. There was no role for the judiciary in enforcement of the Order's provisions. Exec. Order 11491, 3 C.F.R. 861 (1966–1970 Compilation), as amended by Exec. Order 11616, 3 C.F.R. 605 (1971–1975 Compilation); Exec. Order 11636, 3 C.F.R. 634 (1971–1975 Compilation); Exec. Order 11838, 3 C.F.R. 957 (1971–1975 Compilation); Exec. Order 11901, 3 C.F.R. 87 (1976 Compilation); Exec. Order 12027, 3 C.F.R. 159 (1977 Compilation); Exec. Order 12107, 44 Fed.Reg. 1055 (1979); Exec. Order 12126, 44 Fed.Reg. 18923 (1979).

Section 7105, prescribing the FLRA's broad powers and duties,[10] makes clear the FLRA's responsibility to resolve issues relating to the duty to bargain in good faith and to investigate and resolve complaints of unfair labor practices. 5 U.S.C. § 7105(a)(2)(E), (G). Section 7118 of the Act details the procedure the FLRA General Counsel must follow upon receiving a charge of any unfair labor practice.[11] 5 U.S.C. § 7118. Such practices are extensively enumerated in § 7116 and include refusals to bargain under § 7116(a)(5). 5 U.S.C. § 7116. Furthermore, under § 7117 the FLRA has authority to consider matters concerning the duty to bargain in good faith. 5 U.S.C. § 7117.

In addition to the wide range of functions which Congress has entrusted to the FLRA, the structure of the statutory scheme itself indicates that Congress intended no independent federal court jurisdiction over such matters. The Act explicitly empowers the federal courts to act in three instances. First, it makes judicial review of final orders of the FLRA available only in the appropriate federal circuit courts of appeals. 5 U.S.C. § 7123(a). Second, it provides that the FLRA may petition a circuit court of appeals for enforcement of its orders and for appropriate temporary relief or restraining order. 5 U.S.C. § 7123(b). Third, pursuant to § 7123(d), the FLRA, upon issuing an unfair labor practice complaint, may petition a federal district court for temporary injunctive relief. 5 U.S.C. § 7123(d).

The statutory scheme thus reflects Congressional intention to create an agency to deal with "special requirements and needs of the Government"[12] in the field of labor-management relations and to delegate to that agency a broad range of functions to carry out its task. The statutory scheme

further indicates that Congress has provided an explicit, but closely circumscribed, role for the federal courts as outlined in § 7123. The Act read as a whole thus establishes without equivocation the Congressional intent that the statutory procedures be deemed exclusive. *Whitney National Bank, supra,* 379 U.S. at 420–22, 85 S.Ct. at 557–58. Judicial determination of rights under the Act would be contrary to the expressed desire of Congress to establish special procedures designed to meet special governmental needs, and to give the FLRA responsibility to carry out the purposes of the Act. 5 U.S.C. §§ 7101, 7105(a)(1). Furthermore, the Act also commands that its provisions "should be interpreted in a manner consistent with the requirement of an effective and efficient Government." 5 U.S.C. § 7101(b). In view of the comprehensive scope of the FLRA's duty and authority over labor-management relations in the federal government, it would be inconsistent for the district court to assume jurisdiction over subject matter entrusted to the expertise of the agency.

The legislative history also points to the conclusion that Congress did not intend federal district courts to exercise independent jurisdiction with respect to Title VII of the Act. First, Congress considered allowing any party to a collective bargaining agreement the right to seek a district court order requiring the other party to proceed to arbitration, rather than referring the matter to the FLRA. However, Congress rejected this proposal and thus eliminated a means to invoke district court jurisdiction. Congress chose instead to have the FLRA initially consider all such questions. H.R. Rep.No. 1717, 95th Cong., 2d Sess. 157, *reprinted in* [1978] U.S.Code Cong. & Admin. News, pp. 2723, 2860, 2891. This action emphasizes the Congressional intent that

---

10. Its responsibilities include, *inter alia*, determination of the appropriateness of units for labor organization representation, supervision of union elections to determine exclusiveness of representation, prescription of criteria for granting of consultation rights, and resolution of exceptions to arbitrators' awards. 5 U.S.C. § 7105.

11. If a party chooses not to file an unfair labor practice charge, that party may utilize a negotiated grievance procedure established in the collective bargaining contract between the parties. 5 U.S.C. § 7121.

12. 5 U.S.C. § 7101.

such labor-management conflicts in federal agencies be resolved solely as provided by the Act. *See Whitney National Bank, supra,* 379 U.S. at 420, 85 S.Ct. at 557.

Furthermore, the legislative history makes it clear that Congress intended the role of the FLRA to be equivalent to that of the National Labor Relations Board ("NLRB"), which has plenary authority over private labor-management disputes. The legislative history repeatedly compares the functions and structure of the two agencies:

> "Section 7104, in concert with Reorganization Plan No. 2 of 1978, establishes and describes the Federal Labor Relations Authority, an independent establishment in the executive branch. The committee intends that *the Authority's role in Federal sector labor-management relations be analogous to that of the National Labor Relations Board in the private sector.* Functions which, under the Executive Order 11491 program, were distributed among various entities (such as the Civil Service Commission and the Department of Labor) are to be consolidated under the Authority.
>
> Subsection (a) of section 7104 provides that the Authority be composed of three members. No more than two may be of the same political party. No member may engage in other business or employment, or hold another position in the Federal Government, except as otherwise provided by law. The committee intends that the position of member be a full-time position, just as is the position of member of the National Labor Relations Board." H.R.Rep.No. 1403, 95th Cong., 2d Sess. 41, *reprinted in* I House Comm. on Post Office & Civil Service, 96th Cong., 1st Sess., Legislative History of the Civil Service Reform Act of 1978, at 678 (1979) (Comm. Print No. 96-2) (hereinafter cited as *"Legislative History"*) (emphasis added).

The analogy between the new FLRA and the NLRB pertains to the important position of General Counsel, who has the power to investigate and act on charges of unfair labor practices:

> "*It is intended that unfair labor practice complaints will be handled by the General Counsel of the Authority in a manner essentially identical to National Labor Relations Board practices in the private sector.* The one deviation from private sector practices is that it is envisioned that there be retained the current Executive Order 11491 requirement that there be first filed a pre-complaint charge which would provide an opportunity for informal resolution of the issues by the parties. * * * *"* S.Rep.No. 969, 95th Cong., 2d Sess. 106, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 2723, 2828–29 (emphasis added).

*See also* H.R.Rep.No. 1403, 95th Cong., 2d Sess. 42, *reprinted in Legislative History, supra,* at 679 ("The committee intends that the General Counsel be analogous in role and function to the General Counsel of the National Labor Relations Board."); 124 Cong.Rec. H4151 (daily ed. July 28, 1978) (remarks of Rep. Spellman).

■ These comparisons in the legislative history between the FLRA and the NLRB illustrate beyond the shadow of a doubt that Congress intended the FLRA to have exclusive jurisdiction over an unfair labor practice controversy. The Union in the instant case complains of unfair labor practices as defined by § 7116 of the Act, which is similar in format and content to § 8 of the NLRA, 29 U.S.C. § 158. The Supreme Court has held that the broad powers conferred by Congress upon the NLRB to interpret and enforce § 8 of the NLRA necessarily imply that conflicting rules of law, of remedy, and of administration cannot be permitted to operate. *Vaca v. Sipes,* 386 U.S. 171, 179, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967); *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 242, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959). Thus, as a general rule, federal and state courts lack jurisdiction to remedy conduct that is protected or prohibited by the NLRA. *Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 276, 91 S.Ct.

1909, 1913, 29 L.Ed.2d 473 (1971); *Vaca, supra,* 386 U.S. at 179, 87 S.Ct. at 903; *Garmon, supra,* 359 U.S. at 245. It follows that, as a general rule, a federal district court also lacks jurisdiction to adjudicate a charge of a federal agency's unfair labor practice relating to its duty to bargain with the Union. Such a controversy falls within the scope of activity subject to Title VII of the Act and, thus, is within the competence and jurisdiction of the FLRA. Therefore, the FLRA must determine the matter, just as the NLRB's exclusive jurisdiction over a similar controversy in the private sector would deprive the federal courts of jurisdiction.[13]

 Clearly, a federal district court lacks jurisdiction to enjoin an unfair labor prac-

tice upon the petition of a private party, such as the Union in the instant case. Section 7123(d) of the Act permits the FLRA, upon its issuance of an unfair labor practice complaint, to petition a district court for appropriate temporary relief, including a restraining order. 5 U.S.C. § 7123(d). The statute further provides that the court shall not grant temporary relief if the FLRA fails to establish probable cause that an unfair labor practice is being committed. *Id.* The Act thus limits the availability of interim injunctive relief by a district court only to requests by the FLRA after it has investigated a charge and issued a complaint. Nothing in the Act expressly authorizes private parties to seek such injunctive relief.[14]

---

**13.** This preemption doctrine has its exceptions. The Supreme Court has refused to apply the doctrine to activity which was of merely peripheral concern to the federal labor laws or which so touched local interests that it could not be inferred that Congress had deprived states of the power to act. The Supreme Court has also refused to apply the doctrine "where the particular rule of law sought to be invoked before another tribunal is so structured and administered that in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes." *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 188–89, 98 S.Ct. 1745, 1753 n. 13, 56 L.Ed.2d 209 n. 13 (1978); *Farmer v. United Brotherhood of Carpenters & Joiners, Local 25,* 430 U.S. 290, 296–97, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). These judicial exceptions include cases involving a union's duty of fair representation. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and state tort actions such as trespass as an aspect of union picketing, *Sears, Roebuck, supra,* and intentional infliction of emotional distress, *Farmer, supra.* No judicial exception appears applicable here.

Congress has also created exceptions to the NLRB's exclusive jurisdiction in other classes of cases. *See Sears, Roebuck supra* n. 13, 436 U.S. at 189–90, 98 S.Ct. at 1753 n. 14; *Farmer, supra,* n. 13, 430 U.S. at 297, 97 S.Ct. at 1062 n. 8. An example pertinent here is § 301 of the Labor Management Relations Act ("LMRA"), which confers jurisdiction on the federal district courts over suits for breach of a collective bargaining agreement to which a private employer is a party, even if the breach is an unfair labor practice within the NLRB's jurisdiction. 29 U.S.C. § 185; *Farmer, supra* n. 13, at 297, 97 S.Ct. at 1062, n. 8; *Hines v. Anchor Motor*

*Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). However, Congress enacted no analogous provision in Title VII of the Civil Service Reform Act of 1978. That Act vests the FLRA with jurisdiction over such disputes. 5 U.S.C. §§ 7118, 7119(b)(2), (c)(1), 7121(b)(3)(C), 7122(a). Furthermore, the LMRA § 301 basis for district court jurisdiction over suits based on collective bargaining agreements cannot be invoked to confer jurisdiction in the instant case. Section 301 is inapplicable when the federal government is sued, because the term "employer" in the NLRA § 2 does not include agencies of the United States government. 29 U.S.C. § 152(2); *International Federation of Professional & Technical Engineers, Local 1 v. Williams,* 389 F.Supp. 287, 292 (E.D.Va.1974), *aff'd mem.* 510 F.2d 966 (4th Cir. 1975). Accordingly, there is neither express statutory basis for district court jurisdiction over the instant controversy insofar as it is based on the parties' Negotiated Agreement, nor is LMRA § 301 applicable herein, for this Court to find appropriate legislative exception to the preemption doctrine.

**14.** It is noteworthy that Executive Order 11491 and its predecessor Executive Order 10988 did not provide any basis for district court jurisdiction for a private cause of action for injunctive or other relief against a federal agency. *Kuhn v. National Ass'n of Letter Carriers, Branch 5,* 570 F.2d 757, 760–61 (8th Cir. 1978); *Local 1498 v. American Federation of Government Employees AFL/CIO,* 522 F.2d 486, 491–92 (3d Cir. 1975); *Stevens v. Carey,* 483 F.2d 188, 190–91 (7th Cir. 1973); *Manhattan-Bronx Postal Union v. Gronouski,* 350 F.2d 451, 456–57 (D.C.Cir.1965), *cert. denied sub nom. Manhattan-Bronx Postal Union v. O'Brien,* 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966). Jurisdiction in the district courts under the Execu-

Moreover, the conclusion that private parties cannot invoke district court jurisdiction for injunctive relief against an unfair labor practice by a federal agency is consistent with interpretations of the NLRA. Section 7123(d) of the Act closely parallels § 10(j) of the NLRA, which permits the NLRB, upon issuance of a complaint, to petition a district court for interim relief. 29 U.S.C. § 160(j). In construing § 10(j) of the NLRA, the Supreme Court has held that district courts lack jurisdiction to entertain petitions for interim injunctive relief by private parties. *Amalgamated Clothing Workers v. Richman Bros. Co.*, 348 U.S. 511, 516–517, 75 S.Ct. 452, 455–56, 99 L.Ed. 600 (1955). Justice Frankfurter, writing on behalf of the Court, stated:

"Congress has provided an administrative agency to pass on claims that rights granted by the Act are denied or that restrictions imposed by the Act are disregarded. Only after the Board has found such claims to be well-founded and has formulated remedies for their vindication does the jurisdiction for review by the Court of Appeals come into being. However, injunctive relief or a temporary restraining order may be obtained by the board from the appropriate District Court, pending final adjudication by the Board, 'upon issuance of a complaint' by the Board or when there is 'reasonable cause to believe' in the truth of a charge that a party 'has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 8(b).' Congress explicitly gave such jurisdiction to the district courts only on behalf of the Board on a petition by it or 'the officer or regional attorney to whom the matter may be referred.' § 10(j), (1), 61 Stat. 149, 29 U.S.C. § 160(j), (1). To hold that the Taft-Hartley Act also authorizes a private litigant to secure interim relief would be to ignore the closely circumscribed jurisdiction given to the District Court and to generalize where Congress has chosen to specify. To find

exclusive authority for relief vested in the Board and not in private parties accords with other aspects of the Act. See *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261 [60 S.Ct. 561, 84 L.Ed. 738]. Such was the authority recognized in *Capital Service, Inc. v. Labor Board*, 347 U.S. 501 [74 S.Ct. 699, 98 L.Ed. 887]." *Id.* at 516–17, 75 S.Ct. at 455, 456.

*See also National Labor Relations Board v. Nash-Finch Co.*, 404 U.S. 138, 145 n. 3, 92 S.Ct. 373, 378, 30 L.Ed.2d 328 (1971); *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 698 (2d Cir. 1966).

The Union argues that the irreparable injury suffered by its members as a result of the defendants' refusal to bargain over the impact of the RIF provides a basis for invoking the equitable jurisdiction of this Court, relying on *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). The Union broadly asserts that *Sampson* stands for the proposition that a district court has jurisdiction and authority to grant injunctive relief to a discharged federal employee upon a sufficient showing of irreparable injury.

In *Sampson*, a probationary federal employee who had been given notice of her discharge filed an action in federal court to enjoin her dismissal pending pursuit of an administrative appeal to the Civil Service Commission. The district court granted the injunction. The Supreme Court held that the district court did not wholly lack authority to grant temporary injunctive relief to such an employee but that plaintiff had failed to meet the required standard of irreparable injury. *Id.* at 63, 89–91, 94 S.Ct. at 940, 952–53. The Supreme Court reached its conclusion that the district court had such jurisdiction only after a complete review of the Civil Service statutory framework. *Id.* at 80–83, 94 S.Ct. at 948–49.

The Union's reliance on *Sampson* as a basis for this Court's jurisdiction in the

---

tive Orders was confined essentially to cases where the action of the employing agency was alleged to violate constitutional rights. *See, e.*

g. *National Ass'n of Government Employees v. White*, 418 F.2d 1126, 1129–30 (D.C.Cir.1969).

instant case is misplaced. The Supreme Court's holding in *Sampson* that Congress had not totally divested the district courts of their customary authority to grant temporary injunctive relief to discharged federal employees cannot be divorced from the particular statutory scheme under review in that case and fashioned into a blanket rule giving federal courts jurisdiction over every controversy involving discharged federal employees. To assume jurisdiction under the Union's theory that *Sampson v. Murray* provides a generalized basis for suits involving discharged federal employees would contravene the express statutory mandate of § 7101(b) to carry out the Act in a manner consistent with the requirement of an effective and efficient government.

This Court's analysis of Title VII of the Act, the legislative history, the Congressional analogies to the role of the NLRB, and the judicial interpretations of the NLRA holding that federal courts lack jurisdiction at the behest of private parties to enjoin alleged unfair labor practices, compels the conclusion that this Court is precluded from entertaining the instant suit.

Accordingly, the defendants' motion to dismiss is GRANTED.