**UNITED STATES of America, Plaintiff,**

**v.**

**PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO) et al., Defendants.**

No. 80 C 4390.

United States District Court, N. D. Illinois, E. D.

Dec. 15, 1980.

Thomas P. Sullivan, U. S. Atty., Frederick H. Branding, Linda A. Wawzenski, Asst. U. S. Attys., Chicago, Ill., for plaintiff.

Richard J. Leighton, Leighton, Conklin, Lemov & Jacobs, Gary Ethan Klein, Washington, D. C., Harvey Nathan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This case of first impression requires a resolution of the tension between the forces supporting *judicial* control over the congressional policy against strikes by federal employees and the forces supporting the congressional policy for *administrative* resolution of unfair labor practices by federal employees' labor unions. Defendants Professional Air Traffic Controllers Organization and its O'Hare Local No. 316 (though they are separate entities, for convenience this opinion will refer to them collectively by use of the singular term "PATCO") and a number of their officers have been sued by the United States for a preliminary and permanent injunction against a claimed slowdown (alleged to be equivalent to a strike) of air traffic controllers at Chicago's O'Hare Field. PATCO has moved to dismiss the action for lack of jurisdiction. For the reasons stated in this memorandum opinion and order PATCO's motion is granted.

### Facts [1]

PATCO is a labor organization representing air traffic controller employees of the Federal Aviation Administration ("FAA"). On July 31, 1980 PATCO, aided and abetted by the individual defendants, organized and directed a concerted slowdown of the air traffic controllers working at Chicago's O'Hare International Airport. That slowdown is characterized as a "strike" against the operations of the air traffic control system, creating a concerted obstruction to the movement of air traffic within this District and throughout substantial areas of the United States. It has significantly impaired such operations and air traffic movement, causing great loss and inconvenience to the public and the airlines.

When the United States brought this action August 18, 1980 Judge Bua of this Court entered a temporary restraining order prohibiting PATCO, the individual defendants and PATCO's members from "con-tinuing, encouraging, ordering, aiding, engaging, obstructing or taking any part in any work stoppage or slowdown" (TRO ¶ 1(a)). Since that time the parties have consented to the extension of the TRO from time to time, most recently through January 20, 1981.

### Jurisdictional Section Invoked by the United States

PATCO has now moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(1) on the theory that Congress has vested exclusive jurisdiction over the conduct complained of in the Federal Labor Relations Authority ("FLRA"). For the United States, on the other hand, the case is one for the straightforward invocation of the grant of jurisdiction under 28 U.S.C. § 1345:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

Thus the question may be simply put as whether Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101 ff. ("Title VII"), which created the FLRA, is an Act of Congress that "otherwise provide[s]." That question is not as simply answered, for it requires analysis not only of Title VII but of two pre-existing enactments, 5 U.S.C. § 7311 and 18 U.S.C. § 1918.

### Title VII and FLRA Jurisdiction

Under 5 U.S.C. § 7116(b):

(b) For the purpose of this chapter, it shall be an unfair labor practice for a labor organization—

\* \* \* \* \* \*

(7)(A) to call, or participate in, a strike, work stoppage, or slowdown ... or
(B) to condone any activity described in subparagraph (A) of this paragraph by failing to take action to prevent or stop such activity. ...

---

1. For purposes of this motion to dismiss, the "facts" are of course those alleged in the Com-plaint. This Court neither makes nor implies any findings as to the truth of the allegations.

That statutory language is tracked almost verbatim by the Complaint, which alleges that each of the entities comprising PATCO "organized, directed, and commenced a strike against the operations of the air traffic control system and the movement of air traffic within the district and throughout substantial areas of the United States" (¶ 10), that "This strike has taken the form of a concerted slowdown and a concerted obstruction to the movement of aircraft in air commerce or air transportation" (¶ 12) and that "PATCO has failed to take any action to prevent or to stop the illegal actions of its members at O'Hare" (¶ 14).

■ There is therefore no question that the Complaint charges an unfair labor practice under Title VII. Indeed, two days preceding the filing of this action FAA filed a charge with the FLRA, complaining against PATCO of the same actions alleged in the Complaint in virtually identical language, charging that such conduct is a violation of 5 U.S.C. § 7116(b)(7)(A) and (B) and concluding:

> Because such illegal activity is continuing or expected to continue and because such illegal activity has and will interfere with the ability of the FAA to carry out its essential functions, we request the General Counsel, FLRA, seek appropriate temporary relief (including a restraining order) under 5 U.S.C. 7123(d).

Accordingly FLRA jurisdiction over the controversy between the United States and PATCO is uncontroverted.[2]

*Purpose and History of Title VII*

Title VII has created a structure and procedure for the investigation and prosecution of unfair labor practices in the federal sector, including its own provisions for judicial review of FLRA's decisions in a Court of Appeals, not a District Court (5 U.S.C. § 7123(b)). It specifically empowers FLRA to petition a *District Court* for necessary temporary relief (including a TRO) upon issuance of an unfair labor practice complaint (5 U.S.C. § 7123(d)). Those provisions embrace the only role given the federal courts under the statute, substantially (and deliberately, as will be discussed below) paralleling the structure of the National Labor Relations Act applicable to the private sector.

As for the question of intended exclusivity, initial scrutiny of the statute itself discloses the following role for FLRA (5 U.S.C. § 7105(a)(1), emphasis added):

> [FLRA] shall provide leadership in establishing policies and guidance relating to matters under this chapter, and, *except as otherwise provided*, shall be responsible for carrying out the purpose of this chapter.[3]

Section 7101(b) defines "the purpose of this chapter to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government." It mandates that the provisions "should be interpreted in a manner consistent with the requirement of an effective and efficient Government." And like the counterpart NLRB, Section 7105(a)(2)(G) empowers FLRA to "conduct hearings and resolve complaints of unfair labor practices under section 7118."

Before the enactment of Title VII, federal sector labor-management relations were governed by Executive Order 11491, as amended (the successor to Executive Order 10988). That Order provided for an exclu-

---

2. In footnote 18 to its brief in this action the United States advises that, "Consistent with the argument that proceedings, if any, before the FLRA are legally irrelevant to the disposition of the defendants' motion," FAA has chosen to seek to withdraw its unfair labor practice charge before the FLRA without prejudice. That decision is itself "legally irrelevant" to the present motion. This Court's subject matter *jurisdiction* cannot be conferred by such a choice, just as it could not be defeated by a choice to institute FLRA proceedings if jurisdiction here exists. We are dealing with the effect of Title VII itself, not with the effect of its having been invoked by one of the parties.

3. With two statutes thus containing "except as otherwise provided" clauses, we seem to have an analytical problem reminiscent of the *renvoi* concept in conflict of laws cases.

sively administrative process, with the Federal Labor Relations Council having limited review of decisions regarding alleged unfair labor practice complaints (decided initially by the Assistant Secretary of Labor for Labor-Management Relations). There was no place for the federal judiciary in the structure or procedure for dealing with claimed unfair labor practices in federal employment. *Stevens v. Carey*, 483 F.2d 188, 191 (7th Cir. 1973).

Congress enacted Title VII to establish a statutory base in place of the dependency on Executive Orders. As stated in the reprinted Legislative History of the Federal Service Labor-Management Relations Statute, Title VII of the Civil Service Reform Act of 1978, 96th Cong. 1st Sess. (Comm. Print No. 96–7) (hereinafter "Legis. Hist.") at 684:

> Title VII of the bill establishes a statutory basis for labor-management relations in the Federal service. Since 1962, Executive Orders have governed the collective bargaining relationship in the Federal sector. Title VII would for the first time enact into law the rights and obligations of the parties to this relationship—employees, agencies, and labor organizations.
>
> Title VII, in concert with the President's Reorganization Plan No. 2 of 1978, also constructs a new framework for the conduct of Federal labor-management relations. The Federal Labor Relations Authority, an independent establishment in the executive branch, together with its Office of General Counsel, will be primarily responsible for the administration of the program and the enforcement of the policies reflected in Title VII.

FLRA was intentionally cast in the mold of the NLRB (id. at 687):

> Section 7104, in concert with Reorganization Plan No. 2 of 1978, establishes and describes the Federal Labor Relations Authority, an independent establishment in the executive branch. The committee intends that the Authority's role in Fed-

eral sector labor-management relations be analogous to that of the National Labor Relations Board in the private sector. Functions which, under the Executive Order 11491 program, were distributed among various entities (such as the Civil Service Commission and the Department of Labor) are to be consolidated under the Authority.

One of the features of the NLRA most desired by Congress to be imported into federal sector employment relationships was that of defined judicial review in the Courts of Appeal. As stated by Congressman William Ford (Legis.Hist. 856): [4]

> One of the central elements of a fair labor relations program is effective impartial administration. Title VII provides for the creation of an independent and neutral Federal labor relations authority to administer the Federal labor-management program and subjects the decisions of the authority to judicial review.
>
> \* \* \* \* \* \*
>
> By providing for judicial review of the authority's decisions, similar to that provided under the National Labor Relations Act, the right of both sides to receive an impartial decision is further strengthened, while making the authority more accountable for its actions. Judicial review is one of the primary benefits of a statutory program over an Executive order, and to limit such review also limits the advantages of codification.

As already stated, federal *District Courts* were given no jurisdiction under Title VII except for the limited power to grant temporary relief (including injunctive relief) on the petition of FLRA after issuance of an unfair labor practice complaint by its General Counsel, 5 U.S.C. § 7123(b) and (d).

Exclusivity of jurisdiction is an established hallmark of the NLRB, after which FLRA is tailored. As stated in *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 264–65, 60 S.Ct. 561, 563, 84 L.Ed. 738 (1940) (emphasis added):

---

**4.** Cong. Ford was one of the bill's floor managers and a co-sponsor, on whose statements

(quoted later in this opinion) the United States relies to support its position.

To attain its object Congress created a particular agency, the National Labor Relations Board, and established a special procedure. The aim, character and scope of that special procedure are determinative of the question now before us. Within the range of its constitutional power, Congress was entitled to determine what remedy it would provide, the way that remedy should be sought, the extent to which it should be afforded, and the means by which it should be made effective. *Congress has entrusted to the Board exclusively the prosecution of the proceeding by its own complaint, the conduct of the hearing, the adjudication and the granting of appropriate relief.* The Board as a public agency acting in the public interest, not any private person or group, not any employee or group of employees, is chosen as the instrument to assure protection from the described unfair conduct in order to remove obstructions to interstate commerce.

In the same way, the "role and function" of FLRA's General Counsel were specified to "be analogous" to those of NLRB's General Counsel (Legis.Hist. 688). That analogy was underscored in the area of unfair labor practices (Legis.Hist. 766):

It is intended that unfair labor practice complaints will be handled by the General Counsel of the Authority in a manner essentially identical to National Labor Relations Board practices in the private sector.

As the Supreme Court characterized NLRB's General Counsel in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138–39, 95 S.Ct. 1504, 1510–11, 44 L.Ed.2d 29 (1975) (emphasis added):

Congress has delegated to the Office of General Counsel "acting for the Board" the unreviewable authority to determine whether a complaint shall be filed. 29 U.S.C. Section 153(d); *Vaca v. Sipes*, 386 U.S. 171, 182 [87 S.Ct. 903, 912, 17 L.Ed.2d 842]. In those cases in which he decides that a complaint shall issue, the General Counsel becomes an advocate before the Board in support of the complaint. In those cases in which he decides not to issue a complaint, no proceeding before the Board occurs at all. The practical effect of this administrative scheme is that *a party believing himself the victim of an unfair labor practice can obtain neither adjudication nor remedy under the labor statute without first persuading the Office of General Counsel that his claim is sufficiently meritorious to warrant Board consideration.*

There is no designated role for the Department of Justice, as contrasted with the General Counsel, in protecting the public interest when that interest is threatened by action that constitutes an unfair labor practice under the National Labor Relations Act (applicable to private sector employment). Title VII has similarly carved out no specific role for the Department of Justice in protecting the public interest against like threats in the federal employment sector. If that power exists, it must be found to have survived elsewhere despite the comprehensive scheme reflected by adoption of Title VII.

To put the matter in a slightly different way, it is plain beyond cavil that the NLRB, after which Congress specifically modeled FLRA, has *exclusive* jurisdiction over conduct that assertedly constitutes an unfair labor practice. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 248, 79 S.Ct. 773, 781, 3 L.Ed.2d 775 (1959); *Amalgamated Ass'n of Street Electrical Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 292, 91 S.Ct. 1909, 1920, 29 L.Ed.2d 473 (1971) (applying that rule even though the complaint was not framed in unfair labor practice terms). Were FAA a *private* employer it could not come to this Court for injunctive relief and bypass the NLRB. We turn then to the question whether its status as a federal employer destroys the parallel and permits FLRA to be thus bypassed.

### Case Law Under Title VII

We do not write on an entirely clean slate with respect to the relationship between FLRA and the federal courts. In two 1980

cases District Courts have held subject matter jurisdiction *absent* in suits seeking injunctive and other relief on behalf of federal employees against conduct that the Courts held would also constitute an unfair labor practice. *National Federation of Federal Employees, Local 1263 v. Commandant, Defense Language Institute,* 493 F.Supp. 675 (N.D.Cal.1980), *Clark v. Mark, Secretary of the Air Force,* No. 79–CV–777 (N.D. N.Y. August 27, 1980).

In each of those cases the Court engaged in a persuasive analysis, more extended than the prior portion of this opinion, and concluded that FLRA was vested with *exclusive* jurisdiction to deal with conduct that constituted an unfair labor practice. In each case the Department of Justice, which argues to the contrary here, successfully urged that the Court was *without* subject matter jurisdiction.[5]

As perhaps the capstone to its argument in the other two cases, adopted in each instance by the District Court in reaching its decision, the Department of Justice argued (*National Federation* Br. 8, 9):

> The Supreme Court has held on numerous occasions that where, as here, Congress has provided statutory review procedures designed to permit agency expertise to be applied to particular problems, those procedures must be considered exclusive. *Whitney Bank v. New Orleans Bank,* 379 U.S. 411, 421 [85 S.Ct. 551, 558, 13 L.Ed.2d 386] (1964); *Callanan Road Improvements Co. v. United States,* 345 U.S. 507 [73 S.Ct. 803, 97 L.Ed. 1206] (1953); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41 [58 S.Ct. 459, 82 L.Ed. 638] (1938).... That Congress has not expressly provided that the statutory procedure is to be exclusive does not require a different result where it has rejected provision for district court review and instead enacted a specific statutory scheme for obtaining judicial review. *Whitney Bank v. New Orleans, supra,* 379 U.S. at 422 [85 S.Ct. at 558]. Exhaustion of the

statutorily prescribed procedure is a prerequisite to judicial review. *Id., Montgomery v. Rumsfeld,* 572 F.2d 250 (9th Cir. 1978).

Adopting that argument, the Court in *National Federation* stated (493 F.Supp. at 678):

> If the statutory procedures are designed to permit agency expertise to be applied to particular problems, and if district court jurisdiction would decrease the effectiveness of the statutory design, then such statutory procedures should be considered exclusive. *Whitney National Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 420–21 [85 S.Ct. 551, 557–58, 13 L.Ed.2d 386] (1965); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41 [58 S.Ct. 459, 82 L.Ed. 638] (1938). Congress need not expressly label the statutory procedures as exclusive. *Whitney National Bank, supra,* 379 U.S. at 422 [85 S.Ct. at 558].

After reviewing the statutory purposes of Title VII (particularly 5 U.S.C. §§ 7101 and 7105(a)(1), quoted earlier in this opinion), the Court continued (493 F.Supp. at 679):

> In view of the comprehensive scope of the FLRA's duty and authority over labor-management relations in the federal government, it would be inconsistent for the district court to assume jurisdiction over subject matter entrusted to the expertise of the agency.

This conclusion in turn underscores the parallel to the NLRA and decisions under it. As the Supreme Court stated in *Amalgamated Clothing Workers of America, et al. v. Richman Bros. Co.,* 348 U.S. 511, 516–17, 75 S.Ct. 452, 455–56, 99 L.Ed. 600 (1955), employing language that readily paraphrases to Title VII and FLRA (emphasis added to the same language the Department of Justice underscored in its *National Federation* brief):

> Congress has provided an administrative agency to pass on claims that rights granted by the Act are denied or that

restrictions imposed by the Act are disregarded. Only after the Board has found such claims to be well-founded and has formulated remedies for their vindication does the jurisdiction for review by the Court of Appeals come into being. However, injunctive relief or a temporary restraining order may be obtained by the Board from the appropriate District Court, pending final adjudication by the Board, "upon issuance of a complaint" by the Board or when there is "reasonable cause to believe" in the truth of a charge that a party "has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of Section 8(b)." *Congress explicitly gave such jurisdiction to the district courts only on behalf of the Board* on a petition by it or "the officer or regional attorney to whom the matter may be referred." § 10(j), (1), 61 Stat. 149, 29 U.S.C. § 160(j), (1). *To hold that the Taft-Hartley Act also authorizes a private litigant to secure interim relief would be to ignore the closely circumscribed jurisdiction given to the District Court and to generalize where Congress has chosen to specify.* To find exclusive authority for relief vested in the Board and not in private parties accords with other aspects of the Act. See *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261 [60 S.Ct. 561, 84 L.Ed. 738]. Such was the authority recognized in *Capital Service, Inc. v. Labor Board*, 347 U.S. 501 [74 S.Ct. 699, 98 L.Ed. 887]. *Id.*

All that remains, then, is to consider the possible impact of 5 U.S.C. § 7311 and 18 U.S.C. §§ 2 and 1918.

### Effect of Other Statutes On FLRA Exclusivity

Congress has also dealt specifically with the right—or more accurately the lack of right—of federal employees to strike against the government. Although the United States in its brief characterizes the statute as a "prohibition against strikes in the public sector," 5 U.S.C. § 7311 does not literally speak in those terms, but rather in terms of one of the *conditions* of public employment:

> An individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he—
>
> * * * * * *
>
> (3) participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia; or
>
> (4) is a member of an organization of employees of the Government of the United States or of individuals employed by the government of the District of Columbia that he knows asserts the right to strike against the Government of the United States or the government of the District of Columbia.

Section 7311 must however be considered in conjunction with 18 U.S.C. § 1918, which makes an individual's violation of its provisions a crime, and 18 U.S.C. § 2(a), which subjects anyone aiding and abetting commission of a federal crime to punishment as a criminal principal. Thus the specific *statutory* consequence of an *individual employee's* strike participation is his or her potential *termination of employment* under Section 7311 and potential *prosecution* under 18 U.S.C. § 1918. As for a *labor organization*, in *statutory* terms its exposure is to potential *prosecution* under 18 U.S.C. § 2(a).

On three occasions *before* enactment of Title VII, District Courts have exercised their jurisdiction under 28 U.S.C. § 1345 [6] to enjoin strikes by federal sector employees and labor unions (one of those cases granting such relief against PATCO itself). *Air Transport Ass'n v. PATCO*, 313 F.Supp. 181 (E.D.N.Y.1970), aff'd in part and rev'd in part on other grounds *sub nom., United States v. PATCO*, 438 F.2d 79 (2d Cir. 1970),

---

**6.** At that time, of course, there was clearly no Act of Congress that "otherwise provided." Accordingly, because the plaintiff in each case was the United States or a federal agency, Section 1345 jurisdiction unquestionably existed.

*cert. denied*, 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971); *United States v. Branch 60, National Ass'n of Letter Carriers*, 312 F.Supp. 619, 621 (D.Conn.1970); *TVA v. Local 110, Sheet Metal Workers' International Ass'n*, 233 F.Supp. 997, 1000 (W.D.Ky.1962). In each instance the Court predicated relief on 5 U.S.C. § 7311 and the criminal provisions of 18 U.S.C.[7]

Against that total background, we return to the legislative history under Title VII to examine its references to 5 U.S.C. § 7311. When proposed Title VII (having been introduced in both Houses of Congress in May 1978) was reported out of the respective Senate and House committees, it included a provision making it an unfair labor practice for a labor organization to call, condone or engage in a strike. On the House floor, Representative Erlenborn sought to strike Title VII from the proposed Civil Service Reform Act because of his concern that federal employee strikes would become *only* unfair labor practices rather than remaining illegal as they were under existing law (124 Cong.Rec.H. 9454 (daily ed. Sept. 11, 1978)):

> ... Under the current law and the Executive Order a strike by federal employees is illegal. The provision here in Title VII instead makes it merely an unfair labor practice.

> \* \* \* \* \* \*

> What I was pointing out is that at the present time it is illegal, not just an unfair labor practice, an illegal strike by Federal employees, supported by their union will lead to the union no longer being allowed to be the exclusive bargaining agent. Now that will be changed, in substance, by this Title VII.

In response, co-sponsor and floor manager Representative William Ford stated that the existing invalidity of federal employee strikes (*id.* at 9455):

> is not affected by this law at all, or by this bill, rather, so the act of striking will continue to be a violation of Federal law.

The difference is that this bill for the first time will add on top of that a specific procedure available to the Government to go after a labor organization which advocates strike activity by making that an unfair labor practice reachable in the same way that any other unfair labor practice committed by the union or its representatives is reached by the statute, so that, in fact, we did not affect the existing law on strikes. We add a remedy for the Government in the case of someone advocating an illegal strike,

> . . . .

That statement led to the following colloquy (*id.*):

> Mr. Erlenborn. Mr. Chairman, let me understand this. Is the gentleman suggesting that this bill, being a later enactment, would not be considered to be a repeal of the current law, and is it the gentleman's understanding that besides being an unfair labor practice, an illegal strike will also lead to a decertification of the union or to the union's no longer being able to act as the exclusive bargaining agent of the employees?

> Mr. Ford of Michigan. If the gentleman will yield further, Mr. Chairman, title 18 of the United States Code 1918 provides criminal penalties against strikes in violation of 5 United States Code. Five United States Code prohibits the strike. Title 18 makes participating in the illegal strike a crime.

> Neither of those titles is affected by any of the provisions in this act.

Immediately thereafter the House rejected the Erlenborn amendment. During the next few days Title VII was amended to, in the words of the amendment's sponsor Representative Rudd, "re-state in clear and unequivocal language that strikes against the Federal government are illegal and punishable" (*id.* at 9640).

 Accordingly there is no doubt whatever that 5 U.S.C. § 7311 and 18 U.S.C. § 1918 and § 2(a) were left totally intact by the enactment of Title VII. It is absolutely

---

**7.** None of the decisions appeared to give any consideration to the general equitable doctrine that injunctive relief will not be granted against the commission of a crime.

clear that a federal employee who strikes still forfeits his or her right to employment under Section 7311 and may be prosecuted under 18 U.S.C. § 1918. It is equally clear that a labor union that participates in such a strike may still be prosecuted as well under 18 U.S.C. § 2(a). In that important sense the strike is truly illegal: It is a *criminal* offense.

But this Court is not being asked to determine criminal responsibility. It is rather being asked to *enjoin* the conduct of a labor union that is an alleged unfair labor practice. And there is a major difference between the undoubted intention of Congress to preserve the *statutory* provisions making strikes by federal employees illegal and the claimed intention of Congress, advanced by the United States here, to preserve the *case law* enjoining unions from participating in federal employee strikes.

None of the legislative history adduced by the United States deals with the latter contention in specific terms. On the contrary, Representative Ford's response that led to the rejection of Representative Erlenborn's amendment was *specifically* framed in terms of the *criminal* penalties and that "participating in the illegal strike [was] a crime." Representative Rudd supported his amendment, accepted by the bill's sponsors, on the ground that "strikes against the Federal government are *illegal* and *punishable.*"

Stripped of rhetoric, the position of the United States is that Title VII ousts federal courts of jurisdiction over all unfair labor practices[8] except federal employee strikes. There is nothing in the statute that specifies such a distinction. Indeed, the present case exemplifies the very reason that Congress created the FLRA administrative structure to apply specialized knowledge in the labor relations area. PATCO has as-

serted in its Second Amended Counterclaim that the claimed "slowdown," challenged as a "strike" in the Complaint, is really an adherence by the air traffic controllers to safety procedures that FAA has established[9] but has then allegedly caused the controllers to disregard or violate. Resolution of those competing contentions of the parties, and thereby determining whether or not an unfair labor practice exists, is an issue that especially lends itself to be, as *National Federation* put it (493 F.Supp. 675 (N.D.Cal.1980)), "entrusted to the expertise of the agency."

### Conclusion

■ This Court finds eminently persuasive the arguments made by the Department of Justice, and approved by the Courts, in *National Federation* and *Clark v. Mark.* It is not persuaded by the Department of Justice's efforts to distinguish those arguments by singling out one and only one kind of claimed unfair labor practice as surviving Title VII and remaining within the jurisdiction of the District Courts for injunctive relief. Title VII is an Act of Congress that "otherwise provide[s]," and this action is dismissed for want of jurisdiction over the subject matter under 28 U.S.C. § 1345.

In view of this ruling, the parties are directed to appear in court for a status report December 29, 1980 at 9:15 a. m. to discuss the status of PATCO's counterclaim, other pending motions, the previously scheduled January 19, 1981 hearing date and other pending aspects of this litigation.[10]

---

**8.** This was, it will be remembered, the proposition it urged successfully in *National Federation* and *Clark v. Mark.*

**9.** Those procedures, allegedly promulgated under the authority of 49 U.S.C. §§ 1348 and 1421, are collected in an Air Traffic Control Handbook, FAA Order 7110.65 B (1980).

**10.** After this opinion had been dictated, Air Transport Association of America and a number of its members moved to intervene as defendants on PATCO's Second Amended Counterclaim, and this Court entered and continued that motion pending its prompt attention to disposition of the United States' motion to dismiss that Counterclaim. This Court anticipates doing so prior to the December 29 status date.