UNITED STATES of America,
Plaintiff-Appellee,

v.

Gary GREENE, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Harry L. GRANT, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald A. MAY, Defendant-Appellant.

Nos. 81–1625, 82–1003 and 82–1005.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1983.

Opinion on Denial of Rehearing and
Rehearing En Banc April 4, 1983.

---

[black redaction]

Mullinax, Wells, Baab & Cloutman, G. William Baab, Dallas, Tex., for defendant-appellant.

Ronald C.H. Eddins, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This is an appeal by three air traffic controllers employed by the United States Government in the Dallas-Fort Worth area. They were convicted under 18 U.S.C. § 1918 for participating in a strike while employed by the federal government. Because we find that the indictments state facts constituting a crime, the statute itself is not void for vagueness, and the selection of defendants for prosecution did not violate equal protection such that dismissal of the indictments was warranted, we affirm.

Defendants Grant, Greene and May are all former air traffic control specialists who were officers of their local Professional Air Traffic Controllers (PATCO) union chapters.[1] On August 3, 1981, after seven months of highly publicized but unsuccessful negotiations with the Department of Transportation, the defendants, among approximately 13,000 PATCO members nationally and 300 in the Dallas-Fort Worth area, failed to report to work. Defendants were indicted for violation of 18 U.S.C. § 1918(3), which prohibits United States Government employees from participating in a strike against the government.[2] Defendants were convicted, committed to the custody of the Attorney General of the United States for a period of one year and one day,[3] and assessed a fine of $750 each.

Attacking their convictions, defendants are now before the Court contending that the District Court erred in not dismissing the criminal complaints and indictments, pursuant to F.R.Crim.P. 12(b)(1) and (2), on the grounds that: (a) the indictments against them do not state facts sufficient to constitute an offense against the United States; (b) 18 U.S.C. § 1918 is void for vagueness; and (c) the government's prosecutions of Grant, Greene and May were impermissibly selective.

*Strike 1: Statutory Construction*

The defendants argue as their first basis for appeal that as a matter of statutory construction 18 U.S.C. § 1918(3) does not prohibit or penalize striking by government employees but merely states as a condition of employment that if federal workers strike, they may not accept or hold positions in the federal government. Thus, they argue that defendants' indictments do not state facts constituting a crime. While defendants' argument may have some validity for 5 U.S.C. § 7311(3), the civil statute forming the basis for 18 U.S.C. § 1918(3), it has no application to § 1918(3) itself.

1. At the time of the strike, Grant was president of PATCO Local 402 and Greene was president of PATCO Local 442. May, a past president of PATCO Local 402, held that position from July, 1980 to June, 1981.

2. 18 U.S.C. § 1918 provides that:
   "whoever violates the provision of section 7311 of title 5 that an individual may not accept or hold a position in the government of the United States if he—...
   (3) participates in a strike or asserts the right to strike against the government of the United States ... shall be fined not more than $1,000 or imprisoned not more than one year and a day, or both."

5 U.S.C. § 7311 provides that:
   "an individual may not accept or hold a position in the government of the United States ... if he—...
   (3) participates in a strike or asserts the right to strike against the government of the United States...."

3. The Court ordered that the first 90 days of the sentence imposed be served in an institution designated by the Attorney General. The remainder of the sentence was suspended and the defendants placed on probation for a period of 18 months following their release from confinement.

The statute under which this prosecution is brought (18 U.S.C. § 1918(3)) is quite plainly a criminal statute. The penalty for violating the statute includes imprisonment for as much as one year and a day,[4] or a fine of $1,000 or both. Second, the statute is included in Title 18 of the United States Code which is entitled "Crimes and Criminal Procedure." Title 18 is concerned only with crimes, the prosecution of crimes, the administration of criminal justice and the disposition of criminal cases. Title 18 does not deal with the administrative framework of the government or its agencies, with conditions of employment or with the rights, privileges and obligations of civil servants. Moreover, § 1918 is included in Chapter 93 which contains 23 separate sections, each of which defines a crime relating to the acts of public officers and employees. For all these reasons, it is quite unlikely that Congress intentionally or inadvertently inserted a civil statute defining conditions of employment in the middle of a federal criminal code.[5]

Concern for efficiency also dictates this result. If Congress had had in mind to create a condition of employment in § 1918, it could have restricted itself to the sole remedy of terminating the employment of employees who disregarded that condition. It defies logic to assume that Congress intentionally provided criminal penalties against striking workers simply for holding a position in the government when terminating their employment would be an easier and far more appropriate remedy.

Several courts, in passing on this provision, have also suggested that § 1918 is a penal provision prohibiting striking against the government. See e.g., Air Traffic Association of America v. PATCO, 516 F.Supp. 1108, 1110 (E.D.N.Y.) aff'd 667 F.2d 316 (2d Cir.1981) ("strikes by federal employees continued to be illegal ... and indeed criminal ..."); United States v. PATCO, 504 F.Supp. 432, 440 (N.D.Ill.1980), reversed on other grounds, 653 F.2d 1134 (7th Cir.1981) ("[I]t is absolutely clear that a federal employee who strikes ... may be prosecuted under 18 U.S.C. § 1918"); Air Transport Association of America v. PATCO, 453 F.Supp. 1287, 1293 n. 8 (E.D.N.Y.), aff'd, 594 F.2d 851 (2d Cir.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2163, 60 L.Ed.2d 1046 (1979) ("[I]t is also the sworn duty of the Attorney General to enforce these laws [§§ 7311, 1918] but for reasons not fathomable by this Court they have apparently yet to initiate any investigative or enforcement proceedings"); Air Transport Association v. PATCO, 313 F.Supp. 181, 185 (E.D.N.Y. 1970) vacated in part on other grounds sub nom, United States v. PATCO, 438 F.2d 79 (2d Cir.1970), cert. denied, 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971) ("the federal law makes it a crime for a government employee to participate in a strike ..."); see also H.Rep. No. 1152, 84th Cong., 1st Sess. 2 (1955); S.Rep. No. 1256, 84th Cong., 1st Sess. 1 (1955), and 23 A.L.R. Fed. 618 § 7 (1975) for a discussion of cases not involving air controllers which refer to a strike as a crime under § 1918 while applying § 7311.

■ The indictment, then, was sufficient. Participation in a strike by a government employee is a crime under 18 U.S.C. § 1918, and the indictment charged participation in a strike in violation of that section. The indictment need only contain the elements of the offense charged, apprise the defendant of what he must be prepared to meet, and, in case other proceedings are taken against him, show accurately the extent to which he may plead the earlier proceedings. Webb v. United States, 369 F.2d 530, 535–36 (5th Cir.1966). Here, the elements of the offense are striking and being a government employee. The indictment charges both. It gives the defendant sufficient notice of the charge to permit him to prepare a defense, and it establishes the extent to

---

4. Congress, in using the "year-and-a-day" term—a phrase which has meaning only in the context of criminal violations—obviously intended that a violation of § 1918 be classified as a felony criminal offense.

5. See 80 Stat. 608–09 (1966), where Congress explicitly added § 1918 to Title 18.

which the prosecution will bar other proceedings.

### Strike 2: Vagueness

Defendants argue as their second basis for appeal that Congress, by facially prohibiting employment of strikers, instead of strikes by employees, and by failing to define the phrase "hold the position" or the time frame in which it operates, rendered 18 U.S.C. § 1918(3) unconstitutionally void for vagueness.

■ To pass constitutional muster, a statute must give persons of ordinary intelligence fair notice that their contemplated conduct is forbidden by statute. *Papachristou v. City of Jackson,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Bouie v. City of Columbia,* 378 U.S. 347, 348, 351, 84 S.Ct. 1697, 1699, 1701, 12 L.Ed.2d 894 (1964). *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *see Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952); *Stansberry v. Holmes,* 613 F.2d 1285 (5th Cir.1980); *United States v. Mikelburg,* 517 F.2d 246, 252 (5th Cir.1975) *cert. denied,* 424 U.S. 909, 96 S.Ct. 1104, 47 L.Ed.2d 313 (1976); *Turf Center, Inc. v. United States,* 325 F.2d 793 (9th Cir.1963).

Defendants argue that § 1918 fails to give fair warning to potential strikers that they will be subject to criminal penalties for participating in a strike. They suggest that federal employees who choose to strike could reasonably believe that they would not be subject to criminal penalties so long as they did not subsequently attempt to return to work.

■ Defendants' argument is premised on the idea that § 1918 prohibits only employment of strikers and not strikes by government employees.[6] As the preceding discussion suggests, however, such a premise is flawed. It is true that § 1918 includes a condition of employment in its reference to § 7311. As one court pointed out, "Section 7311 must however be considered in conjunction with 18 U.S.C. § 1918, which makes an individual's violation of its provisions a crime ... thus the specific statutory consequences of an individual employee's strike participation is his or her potential termination of employment under Section 7311 *and* potential prosecution under 18 U.S.C. § 1918." (emphasis added). *United States v. PATCO,* 504 F.Supp. at 438. Reading § 1918 in this manner, we hold that the statute (§ 1918) is not unconstitutionally vague since it gives fair warning to federal employees that no person may strike against the government while holding a government job without being subject to criminal prosecution and penalties. *United States v. Amato,* 534 F.Supp. 1190 (E.D.N.Y.1982); *United States v. Haggerty,* 528 F.Supp. 1286 (D.Colo. 1981). *See also Air Traffic Association,* 516 F.Supp. at 1110; *Air Transport Association,* 453 F.Supp. at 1294.

This result is not vitiated by defendants' contention that the failure to define the phrase "hold a position" renders the statute unconstitutionally vague. We agree with the court in *Amato* that "the plain meaning of the words 'holds a position' in § 1918(3) is that a person 'holds a position' when he is

---

**6.** The force of defendants' argument is diminished by the provisions of 5 U.S.C. § 3333, which require that a federal employee execute an affidavit upon appointment stating that he is not striking and will not do so. Grant, Greene and May all executed the following affidavit:

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof. I do not and will not assert the right to strike against the Government of the United States or any agency thereof while an employee of the Government of the United States or any agency thereof. I do further swear (or affirm) that I am not knowingly a member of an organization of Government employees that asserts the right to strike against the Government of the United States or any agency thereof and I will not, while an employee of the Government of the United States or any agency thereof, knowingly become a member of such an organization.

currently employed by the federal government."[7]  *Amato,* 534 F.Supp. at 1199.

Moreover, the fact that the statute does not set a time frame in which the proscribed conduct must occur or one for "holding a position" does not render it impermissibly vague.  As suggested by the Government in its brief, the time frame in which 18 U.S.C. § 1918 applies is "anytime."  We can find no statutory or judicially imposed requirement that every statute include a specific timetable for its violation and we refuse to impose such a requirement here.  Thus, we hold that the Constitution is not offended by the provisions of 18 U.S.C. § 1918.

### Strike 3:  Selective Prosecution

■ Defendants argue as their third basis for appeal that the indictments against them should be dismissed because their selective prosecution denied them equal protection of the laws.  To prevail on a selective prosecution challenge, a defendant must first make a *prima facie* showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not.  *United States v. Rice,* 659 F.2d 524, 526 (5th Cir.1981); *United States v. Tibbetts,* 646 F.2d 193, 195 (5th Cir.1981); *United States v. Lichenstein,* 610 F.2d 1272, 1281 (5th Cir.), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980).  If a defendant meets this first showing, he must then demonstrate that the government's discriminatory selection of him for prosecution has been invidious or in bad faith in that it rests upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.  *Rice,* 659 F.2d at 526;  *Tibbetts,* 646 F.2d at 195;

*United States v. Kahl,* 583 F.2d 1351, 1353 (5th Cir.1978);  *United States v. Johnson,* 577 F.2d 1304, 1308 (5th Cir.1978).  *See United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974).

The record in this case indicates that defendants have met the first part of the test for selective prosecution.  Of the approximately 300 air traffic control specialists who failed to report for work in the Dallas-Fort Worth area, only six individuals, including the three defendants here, were prosecuted.  Unlike the situation in Fifth Circuit selective prosecution cases involving tax protestors where the government argued that it had prosecuted all *known* violators,[8] the United States here acknowledges that there was some selectivity in singling out the defendants for prosecution.  Thus, the focus of this case shifts to the second part of the selective prosecution test which examines the reasons why the defendants, and not others, were prosecuted.

■ We begin this inquiry by recognizing that the mere exercise of some selectivity by the government in instituting prosecutions is not itself a constitutional violation.  *Rice,* 659 F.2d at 527;  *see Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962).  Moreover, absent an invidious purpose, selection of cases for close investigation and for prosecution is not impermissible merely because it focuses upon those most vocal in encouraging concerted action to violate the law.  *Rice,* at 527;  *Johnson,* at 1309;  *Tibbetts,* at 195.  Thus, defendants' status as PATCO officials should not immunize them from prosecution as strike leaders under § 1918(3).  As one court explained:

---

**7.** Sections 7311(3) and 1918(3) have already been the subject of judicial scrutiny by a federal district court which held that they were not void for vagueness or overbreadth.  *United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879, 884–85 (D.D.C.), *aff'd mem.,* 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971).  In its holding, the court construed the term "holds a position" when it stated, "It is only the actual refusal by [federal] employees to provide services that is forbidden by 5 U.S.C. § 7311 and

criminalized by 18 U.S.C. § 1918(3)."  The court pointed out further that "the federal courts have broad latitude to construe a [federal] statute in such terms as will save it from the infirmities of vagueness and overbreadth."  *Id.* at 885.

**8.** *United States v. Brewer,* 681 F.2d 973 (5th Cir.1982);  *Rice,* 659 F.2d 524;  *Tibbetts,* 646 F.2d 193;  *Kahl,* 583 F.2d 1351;  *Johnson,* 577 F.2d 1304.

To so hold would be to eviscerate the enforcement of § 1918, all union leaders who are also strike leaders would escape prosecution while strike leaders from the rank and file would have no such protection. Union leadership may not be used as a shield to prosecution under § 1918(3) ... Aggressive display of opposition to a law and blatant defiance of authorities, challenging them to prosecute, should not give rise to immunity from prosecution.

*Amato,* 534 F.Supp. at 1195; *see United States v. Rickman,* 638 F.2d 182, 183 (10th Cir.1980); *United States v. Stout,* 601 F.2d 325, 328 (7th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979). Moreover, one court has even suggested that potential media attention may be a legitimate basis for selection for prosecution. It held that:

> selection for prosecution based in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with the tax laws. Since the government lacks the means to investigate every suspected violation of the tax laws, it makes good sense to prosecute those who will receive, or are likely to receive, the attention of the media.

*United States v. Catlett,* 584 F.2d 864, 868 (8th Cir.1978). *See also United States v. Ness,* 652 F.2d 890, 892 (9th Cir.1981); *Johnson,* 577 F.2d at 1309.

Such holdings are justified on the grounds of the separation of powers. Since the decision to prosecute one person rather than another is one left to executive discretion, *see* F.R.Crim.P. 48(a) and (b); *United States v. Cox,* 342 F.2d 167 (5th Cir.) (en banc), *cert. denied sub nom, Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965), the courts are both reluctant and restricted in any review of prosecutorial decisions. In fact, at least one circuit court has held that the decision to prosecute is simply not reviewable, and that it is not a function of the judiciary to review the exercise of executive discretion in this regard. *Newman v. United States,* 382 F.2d 479, 482 (D.C.Cir.1967). Though we do not adopt the "no-review" rule of the D.C. Circuit, we do point out that defendants bear a very heavy burden in demonstrating invidious purpose which invades or overrides that prosecutorial discretion. This is especially true since there is a presumption that a criminal prosecution is undertaken in good faith.[9] *United States v. Ojala,* 544 F.2d 940, 943 (8th Cir.1976), *United States v. Falk,* 479 F.2d 616, 620 (7th Cir.1973).

Though it should be apparent from the preceding discussion that making such a *prima facie* showing of selective prosecution is a difficult task, it is unclear what the precise nature of the showing should be. This is true, in part, because so few parties have succeeded in shifting the burden of proof to the government. *See United States v. Falk,* 479 F.2d 616 (7th Cir.1973); *United States v. Steele,* 461 F.2d 1148 (9th Cir.1972). In fact, we are not aware of any case in this circuit in which a defendant has made a *prima facie* showing of discriminatory purpose. In those cases in other circuits where the government has been required to demonstrate a legitimate basis for selection, the courts have required evidence creating "a strong inference of discriminatory prosecution." *Steele,* at 1152. Therefore, an examination of the cases cited above where defendants have been successful, at least in part, in shifting the burden of proof to the government would be instructive.

In *Steele,* the defendant was prosecuted and convicted for refusing to answer questions on the Department of Commerce Census form of 1970. The defendant demonstrated that only members of a census resistance movement had been prosecuted, although the government was aware of other people who had failed to fill out the forms.

---

**9.** We acknowledge that the court in *United States v. Haggerty,* 528 F.Supp. at 1291 n. 4, pointed out that "the PATCO cases are the first selective prosecution cases where employees are being prosecuted for employment related activities and the government is both employer and prosecutor. This unique factual situation might suggest that the usual presumption of good faith in instituting prosecutions is entitled to less than its ordinary weight."

All of those prosecuted had publicized their opposition to the census. Steele introduced further evidence that

> Leland Gray, the Regional Technician for the census in Hawaii, described the four as "hard core resisters." He ordered his staff to compile special background dossiers on them, a discretionary procedure not followed with any other offenders. Gray testified that his organization had been very concerned about the census resistance movement.

461 F.2d at 1151. The government offered no explanation for its selection of the four, other than prosecutorial discretion. The Ninth Circuit reversed Steele's conviction, holding that Steele had created a strong inference of discriminatory prosecution which the government had failed to explain away. *Id.* at 1152.

In *Falk,* the defendant was convicted on three counts relating to the failure to possess a draft card and on a fourth count, for refusing to submit to induction.[10] Falk was an active member of a draft counseling organization. He alleged that the government decided to prosecute him "to punish him for and stifle his and others' participation in protected First Amendment activities in opposition to the draft and the war in Vietnam." 479 F.2d 619–20. Falk claimed that there were 25,000 people who had dispossessed themselves of their draft cards without facing criminal sanctions. He presented documentary evidence of an agreement between the military and the Department of Justice that they would not prosecute registrants who turned in their draft cards rather than burning them. *Id.* at 621. Further, the decision to prosecute Falk had been approved not only by the Assistant United States Attorney, but also by various superiors all the way to the Department of Justice in Washington. The Seventh Circuit found it "difficult to believe that the usual course of proceedings in

a draft case requires such careful consideration by such a distinguished succession of officials prior to a formal decision to prosecute." *Id.* at 622.

Thus, the Seventh Circuit held that Falk had made out a *prima facie* case of improper selective prosecution and remanded for a hearing at which the government would have an opportunity to prove that its decision to prosecute had not been based on improper criteria:

> The unrebutted evidence before the court, including the admission of the Assistant United States Attorney and the two published statements by the Selective Service officials which contradict the propriety of the action taken in this case, made out at least a *prima facie* case of improper discrimination in enforcing the law.

479 F.2d at 623.

■ In *Steele* and *Falk,* the defendants established that they had engaged in protected first amendment activity, that they had been singled out for prosecution although the government was aware that others had violated the law, and that the government had followed unusual discretionary procedures in deciding to prosecute. In the instant action, defendants maintain that they were prosecuted for protected union activities.[11] We agree with defendants that the government cannot prosecute them for engaging in protected activities; thus, they cannot be prosecuted solely on the basis of their status as union officials. On the other hand, defendants cannot talk themselves into immunity from prosecution for otherwise illegal activities. We state categorically that prosecution of strike leaders or highly visible vocal opponents, who are also union officials, does not in and of itself indicate impermissible selection or invidious discrimination. *See Rice,* 659 F.2d at 527; *Johnson,* 577 F.2d at 1409; *Tibbetts,* 646 F.2d at 195. As the district court

---

**10.** The district court granted a post-trial motion for acquittal on the induction count on the ground that there had been no basis in fact for denying Falk classification as a conscientious objector.

**11.** Union participation by federal employees is a protected activity. 5 U.S.C. § 7102 provides:

> Each employee shall have the right to form, join or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of

such right. Except as otherwise provided under this chapter, such right includes the right (1) to act for a labor organization in the capacity of a representative and the right, in that capacity to present the views of the labor organization . . . .

The right to organize and to select representatives to engage in collective bargaining is also constitutionally protected. *See United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879, 883 (D.D.C.), *aff'd mem.,* 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971).

stated in *United States v. Amato*, 534 F.Supp. 119: "It does not follow that merely because union leadership may be highly correlated with strike leadership that the government's decision to target strike leaders is invidiously discriminatory."

The record in this case indicates that defendants were prosecuted on the basis of their status as strike leaders, not as union officials. Defendants called two witnesses, Edmond R. Johnson and Donald Kneram.[12] Kneram had talked with FBI agents about Greene, and Johnson testified to a conversation with FBI agents concerning Grant and May. All of these conversations apparently took place after the nationwide work stoppage. Both Johnson and Kneram testified to statements made by defendants concerning their participation in the August strike. The witnesses testified that defendants had not reported for work on August 3, 4 and 5, 1981. In addition, both Johnson and Kneram reported that they had told FBI agents of defendants' union activities and of their status as PATCO officials. When Johnson was called by the government in support of its case against Grant, the following exchange occurred on redirect:

Q. Mr. Baab, the defense attorney, referred to questions you were asked by the FBI relative to the president of the union. Were you also requested to assist the FBI in identifying people that were strike leaders?

A. I was asked to identify personnel who were officers and representatives within the union.

12. Edmond R. Johnson was employed by the Department of Transportation, Federal Aviation Administration, as Chief of the Aircraft Control Center in the Dallas-Fort Worth area. Donald K. Kneram was also employed by the Federal Aviation Administration as Chief of the Dallas-Fort Worth tower.

13. The following representative affidavit contains the following statements:

2. Mr. Johnson told this affiant that HARRY L. GRANT is an Air Traffic Control Specialist and has been for at least ten years employed by the Federal Aviation Administration. Mr. Johnson told this affiant that on June 15, 1981, HARRY L. GRANT informed Mr. Johnson that he was the President and Facility Principle Representative for Local 402 of P.A.T.C.O., which is the Professional Air Traffic Controllers Organization.

3. Mr. Johnson told this affiant that on August 2, 1981, between 4:30 and 5:00 P.M., Mr. Johnson met with HARRY L. GRANT at the Air Route Traffic Control Center in Tar-

Record, Vol. III, at 86. This information was later included in the affidavits supporting the criminal complaints against Grant, Greene and May.[13]

Defendants insist that because information concerning their union status was transmitted to the FBI and was reported in the affidavits supporting their indictments, they have made a showing of invidious discrimination or bad faith sufficient to shift the burden of proof on selective prosecution to the government. They contend that such evidence, combined with an alleged "pattern" of prosecution of union officials in the Dallas-Fort Worth area, gives rise to the inference that prosecution of defendants was based on their assertion of the right to strike and their union activities. We do not agree.

Taken as a whole, the evidence tends to establish that the government instituted the prosecutions of Greene, Grant and May because defendants were strike leaders, not because of their status as union officials. The testimony of Kneram and Johnson, which defendants assert establishes selective prosecution, also suggests that Grant, Greene and May all actively participated in the August 3 strike. For example, Johnson testified that he informed the FBI agent about a conversation that he had had with Grant on the evening before the strike. Johnson had asked Grant if he and the union members planned to participate in the strike and Grant said yes. The agent could have assumed that Grant had urged his members to strike.[14] Further, in addi-

rant County, Texas, and HARRY L. GRANT told Mr. Johnson that P.A.T.C.O., Local 402, was intending to strike and was going to go on strike on August 3, 1981. GRANT told Mr. Johnson, according to Johnson, that GRANT would be one of those members of P.A.T.C.O., Local 402, that would go out on strike against the United States Government. Mr. Johnson told this affiant that HARRY L. GRANT was regularly scheduled to work at the Air Route Traffic Control Center, Tarrant County, Texas, at 8:00 A.M. on August 3, 1981. Mr. Johnson told affiant that GRANT failed to report for work and did not call in sick nor on annual leave nor was he temporarily assigned to another Air Traffic Control Facility.

14. Since the issue in this case is whether the government had a discriminatory purpose in prosecuting defendants, inquiry into the agent's assumptions rather than Grant's actual actions is critical.

tion to live testimony, the court had, for *in camera* inspection, a number of files and materials that were in the hands of the government, supplied to the court in response to a demand by defendants. In those materials, the government consistently refers to strike leaders, not union officials, as the targets of prosecution.

■ Defendants made no showing that the government was aware of any strike leaders, whether union officials or rank-and-file members, whom it did not prosecute. Neither have they made any showing that the government failed to follow its own established policy of non-prosecution, as was the case in *Falk* and *Haggerty*.[15] We conclude on the basis of the record before us, that defendants have not proven that they were prosecuted for their protected union activities, rather than for their actions as leaders and organizers of an illegal strike. Lacking any further indication that defendants were selected for prosecution on some impermissible ground, we hold that defendants failed to demonstrate sufficient bad faith or invidious discrimination to make out a *prima facie* case of selective prosecution. On that basis, we hold that the district court was correct in not dismissing defendants' indictments on grounds of selective prosecution.

AFFIRMED.

### ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC.

PER CURIAM:

In denying the Petition for Rehearing in the above-captioned cases, this Court would point out that it in no way utilized or relied upon the *in camera* materials submitted to the District Court (*See*, 697 F.2d at 1238 and note 15) for a determination that defendants Grant, Greene and May were prosecuted as strike leaders rather than as union officials. Having failed to find evidence in the record sufficient to make out a *prima facie* case of selective prosecution, this Court examined the *in camera* materials in an attempt to discover if they contained any information which might indicate prosecution on some impermissible ground. Finding none, we affirmed the judgment of the District Court.

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16) the Suggestion for Rehearing En Banc is DENIED.

---

15. The *in camera* materials do suggest "targeting" of strike leaders before the strike actually occurred, as in other PATCO cases, *see Amato*, 534 F.Supp. 1190; *Haggerty*, 528 F.Supp. 1286. There is, however, no evidence that the defendants in this case were specifically targeted *before* they broke the law by participating in the work stoppage. Further, PATCO members made no secret of their plan to engage in massive criminal violations, and we cannot say that it was an abuse of prosecutorial discretion for the Department of Justice to prepare to investigate those who had admittedly planned and urged others to engage in the illegal strike, particularly a strike which could have threatened the safety of the air traveling public, as well as the country as a whole.