**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard M. HOOVER, Defendant-Appellant.**

No. 83–2390.

United States Court of Appeals, Fifth Circuit.

March 5, 1984.

Michael J. Brady, Tucson, Ariz., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before POLITZ, RANDALL and JOLLY, Circuit Judges.

**RANDALL, Circuit Judge:**

Defendant-appellant Richard Hoover appeals his conviction under 18 U.S.C. § 1918 for participating in a strike while employed by the federal government. Finding Hoover's claims to be without merit, we affirm.

Hoover was employed by the Federal Aviation Commission as an air traffic controller at Houston Intercontinental Airport. Hoover served as president of his local Professional Air Traffic Controllers ("PATCO") union chapter. On August 3, 1981, after seven months of highly publicized but unsuccessful negotiations with the Department of Transportation, Hoover, along with approximately 13,000 PATCO members nationwide, failed to report to work. He was indicted for violating 18 U.S.C. § 1918(3) (1982), which prohibits United States government employees from participating in a strike against the government.[1] Hoover was convicted and sentenced to a term of imprisonment for one year and a day.[2]

On appeal, Hoover contends that the district court erred in not dismissing his indictment because (1) section 1918 does not make it a crime for federal employees to strike against the government; (2) section 1918 is void for vagueness; and (3) the government's prosecution of him was impermissibly selective.

Hoover's first two contentions were rejected by us in *United States v. Greene,* 697 F.2d 1229 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). *Greene* also involved the prosecution of striking air traffic controllers under section 1918(3). There we held that participation in a strike by a government employ-

---

1. 18 U.S.C. § 1918 provides that:

 Whoever violates the provision of section 7311 of title 5 that an individual may not accept or hold a position in the Government of the United States ... if he—
 (3) participates in a strike, or asserts the right to strike, against the Government of the United States ...
 shall be fined not more than $1,000 or imprisoned not more than one year and a day, or both.
 5 U.S.C. § 7311 (1982) provides that:

 An individual may not accept or hold a position in the Government of the United States ... if he—
 (3) participates in a strike, or asserts the right to strike, against the Government of the United States ....

2. The district court ordered that the first 90 days of the sentence be served in an institution designated by the Attorney General. The remainder of the sentence was suspended and Hoover was placed on probation for a period of 18 months following his release from custody.

ee is a crime under section 1918, and that section 1918 is not void for vagueness. 697 F.2d at 1231–34. In *Greene* we also carefully described the burden a defendant must meet in order to prevail on a selective prosecution challenge. First, a defendant must "make a *prima facie* showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not." *Id.* at 1234. Second, a defendant "must then demonstrate that the government's discriminatory selection of him for prosecution has been invidious or in bad faith in that it rests upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Id.* If a defendant meets both of these requirements, then the burden shifts to the government to demonstrate a legitimate basis for selecting the defendant for prosecution. *Id.* at 1235.

The record in this case indicates that Hoover has met the first part of the test for showing selective prosecution. Over three hundred air traffic controllers failed to report to work in the Houston area; yet only three individuals, including Hoover, were prosecuted. Having met this threshold requirement, Hoover must now show that the government's decision to prosecute him was motivated by an improper purpose or was in bad faith.

 Hoover asserts that he was singled out for prosecution (1) because he spoke out in support of the strike in the media, and (2) because of his status as a PATCO official. Before addressing these allegations, we note, as we did in *Greene,* that the mere exercise of some selectivity by the government in instituting prosecutions is not in itself prohibited by the constitution. The decision to prosecute one person instead of another is a proper exercise of executive discretion, *see* Fed.R.Crim.P. 48(a); *United States v. Cox,* 342 F.2d 167 (5th Cir.) (en

banc), *cert. denied sub nom. Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965), and we are "both reluctant and restricted in any review of prosecutorial decisions." *Greene,* 697 F.2d at 1235. Thus, a defendant "bear[s] a very heavy burden in demonstrating invidious purpose which invades or overrides that prosecutorial discretion." *Id.* This is especially true because there is a presumption that a criminal prosecution is undertaken in good faith.[3]

Hoover first contends that he was targeted for prosecution because he was openly vocal in support of the strike. At the hearing on Hoover's motion to dismiss, Francis Davis, Manager of Houston Intercontinental Airport, testified that several months before the strike began, the government had asked him for the names of those controllers who were "strike leaders." Record Vol. V at 68. Hoover's was one of the names Davis provided. Davis testified that he had identified Hoover as a strike leader because Hoover had actively promoted the strike on television, radio and in the print media, as well as in his own union. *Id.* at 72–73.

 Selective prosecution is not impermissible simply because it concentrates upon those most vocal in encouraging action to violate the law. In discussing selective prosecution of tax protesters, we noted in *Greene* that potential media attention can serve as a legitimate reason for singling out certain individuals rather than others for prosecution:

"[S]election for prosecution based in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with the tax laws. Since the government lacks the means to investigate every suspected violation of the tax laws, it makes good sense to prosecute those who will receive,

---

**3.** We acknowledge, as we did in *Greene,* that " 'the PATCO cases are the first selective prosecution cases where employees are being prosecuted for employment related activities and the government is both employer and prosecutor. This unique factual situation might suggest that the usual presumption of good faith in instituting prosecutions is entitled to less than its ordinary weight.' " 697 F.2d at 1235 n. 9 (quoting *United States v. Haggerty,* 528 F.Supp. 1286, 1291 n. 4 (D.Colo.1981)).

or are likely to receive, the attention of the media."

697 F.2d at 1235 (quoting *United States v. Catlett*, 584 F.2d 864, 868 (8th Cir.1978)). *See also United States v. Ness*, 652 F.2d 890, 892 (9th Cir.1981). Thus, we conclude, as we did in *Greene*, that prosecution of strike leaders or highly visible, vocal opponents of the law is not a showing of impermissible selection or invidious discrimination. *See* 697 F.2d at 1236.

■ Hoover also asserts that he was selected for prosecution because he was a union officer. We do not hesitate to acknowledge that union participation by federal employees is a protected activity, as is leadership of a union.[4] But Hoover's status as an officer of PATCO does not shield him from prosecution under section 1918(3). As we stated in *Greene:*

"To so hold would be to eviscerate the enforcement of § 1918, all union leaders who are also strike leaders would escape prosecution while strike leaders from the rank and file would have no such protection. Union leadership may not be used as a shield to prosecution under § 1918(3) .... Aggressive display of opposition to a law and blatant defiance of authorities, challenging them to prosecute, should not give rise to immunity from prosecution."

697 F.2d at 1235 (quoting *United States v. Amato*, 534 F.Supp. 1190, 1195 (E.D.N.Y. 1982)).

Hoover's contention is, however, that the government prosecuted him to punish him because he held a position of authority in the union that went on strike against the government, not because he was actually a leader of the strike. Hoover points out that of the four strike leaders that Davis had identified, Hoover was the only union officer, and Hoover was the only one prosecuted. But such a showing alone is hardly sufficient to show that the government decided to prosecute Hoover because he was

an officer of PATCO. The government's decision not to prosecute the other three controllers may have been due to limited manpower or insufficient evidence with which to bring an indictment—all considerations lying properly within the discretion of the executive branch. It is not our province or duty to question this discretion unless the defendant can first demonstrate that it was invidious or in bad faith.

In *Greene*, all three defendants were PATCO officials who argued that they had been prosecuted as a result of that status. Before we examined the defendants' evidence in that case, we discussed cases where defendants had been successful in shifting the burden of proof to the government. The first, *United States v. Steele*, 461 F.2d 1148 (9th Cir.1972), involved the prosecution of a member of a census resistance movement. There, the defendant showed that only members of the movement had been prosecuted, although the government was aware of others that had failed to fill out their census forms. The defendant also introduced evidence to show that the government had prepared special background dossiers on him and the other members of the resistance movement, a discretionary procedure not followed with any other offenders. *Id.* at 1151. Similarly, in *United States v. Falk*, 479 F.2d 616 (7th Cir.1973), the defendant was convicted on three counts relating to the failure to possess a draft card and on a fourth count, for refusing to submit to induction. He alleged that the government decided to prosecute him "to punish him for and stifle his and others' participation in protected First Amendment activities in opposition to the draft and the war in Vietnam." *Id.* at 619–20. Falk not only showed that there were 25,000 men who had dispossessed themselves of their draft cards without facing criminal sanctions, but also presented documentary evi-

---

**4.** 5 U.S.C. § 7102 (1982) provides that:

Each employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of

such right. Except as otherwise provided under this chapter, such right includes the right—

(1) to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization ....

dence that the government would not prosecute registrants who turned in their draft cards rather than burning them. *Id.* at 621. Falk also showed that the decision to prosecute him had been approved not only by the United States Attorney, but also by various superiors all the way to the Department of Justice in Washington. The Seventh Circuit found it "difficult to believe that the usual course of proceedings in a draft case requires such careful consideration by such a distinguished succession of officials prior to a formal decision to prosecute," *id.* at 622, and remanded the case to give the government an opportunity to present evidence rebutting this *prima facie* case of selective prosecution.

We observed in *Greene* that "[i]n *Steele* and *Falk,* the defendants established that they had engaged in protected first amendment activity, that they had been singled out for prosecution although the government was aware that others had violated the law, and that *the government had followed unusual discretionary procedures in deciding to prosecute.*" 697 F.2d at 1236 (emphasis added). The defendants in *Greene* challenged their selective prosecution by calling witnesses that testified that the FBI had asked them to identify PATCO officials, and that, in compliance with these requests, they had provided the defendants' names. *Id.* at 1237. We found, however, that the evidence showed that the defendants had been prosecuted because they were strike leaders, not because they were union officers. Strong evidence of this fact was that the government had prosecuted all known strike leaders. In addition, the defendants also failed to show that the government had instituted any unusual or extraordinary procedures demonstrating that the defendants were singled out solely

because they were PATCO officers. *Id.* at 1238. Thus, the defendants in *Greene* failed to establish a *prima facie* case of impermissible selective prosecution.

Unlike the defendants in *Steele* and *Falk,* and like the defendants in *Greene,* Hoover has failed to show that the government followed any special or unusual procedures in deciding to prosecute him rather than the other strike leaders initially targeted. Moreover, at oral argument Hoover admitted that there was no direct evidence to show that the government had prosecuted him in retaliation for the exercise of his first amendment rights as a union official.[5]

Hoover argues that, unlike the defendants in *Greene,* he has shown that the government has failed to prosecute known strike leaders—namely, the other three individuals identified by Davis. Such an argument appears to imply that had the defendants in *Greene* been able to show that known strike leaders had not been prosecuted, they would have met their burden of selective prosecution. Such is not the case. Although we found in *Greene* the fact that all known strike leaders had been prosecuted to be strong evidence contrary to the defendants' assertion that they were prosecuted merely because they were union officials, our discussion of the other evidence presented made clear that the defendants in *Greene* had failed to show that the government's purpose in prosecuting them was to punish them for protected first amendment activities. Thus, although Hoover has shown that the government declined to prosecute all initially-targeted strike leaders, he has already conceded that there is no evidence to show that he was prosecuted because of his role as local PATCO president.[6]

---

**5.** At oral argument Hoover's counsel asserted that:

> We are not saying that the government chose Hoover to deny him future exercise of constitutional or other protected rights .... But we are saying that there is a clear inference that [the government] selected [Hoover] because of his past exercise of his rights under 5 U.S.C. § 7102.

When we asked Hoover's counsel what evidence there was to substantiate this, he answered:

> Your Honor, there is no direct evidence on that point in the record.

**6.** It is true that Davis identified Hoover as a strike leader, in part, because of his position as president of his local PATCO union. However, as we stated in *Greene,* " '[i]t does not follow that merely because union leadership may be

We reiterate that Hoover carries a "very heavy burden" to show invidious purpose before the burden shifts to the government to prove that the basis for its prosecution was legitimate. *Greene,* 697 F.2d at 1235.[7] Because Hoover has failed to carry that burden, we hold that the district court was correct in not dismissing Hoover's indictment on the grounds of selective prosecution.[8]

AFFIRMED.

highly correlated with strike leadership that the government's decision to target strike leadership is invidiously discriminatory.'" *Id.* at 1237 (quoting *United States v. Amato,* 534 F.Supp. at 1190). Furthermore, witnesses in *Greene* testified that they had been asked to identify union officers, whereas Davis testified that he had been asked to identify strike leaders. Finally, in *United States v. Amato, supra,* where the defendants also alleged that they had been targeted initially because of their union activism, the court remarked, "[w]e are not convinced that even if there were an impermissible selection of a target by an FAA official, it would taint the final determination by the Department of Justice to prosecute. The fact is that 18 U.S.C. § 1918 relates to participating in a strike. The final decision to prosecute [the defendants] was based upon a determination ... that there was sufficient evidence of their strike participation under § 1918." 534 F.Supp. at 1196.

7. For a detailed discussion of the Department of Justice's targeting policy in the PATCO prosecutions, see *United States v. Amato, supra,* at 1193–95.

8. Hoover also alleges that the district court erred in not allowing him to present certain evidence rebutting the government's evidence of unfair labor practices committed by Hoover. We need not address this contention because the exclusion of such evidence would constitute harmless error.