Ronnie **MILLER, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. **01–93–00268–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

April 14, 1994.

Rehearing Denied May 19, 1994.

Chris J. Kling, Bryan, for appellant.

Brenda Bailey, Bryan, for appellee.

Before HUTSON–DUNN, DUGGAN and ANDELL, JJ.

### OPINION

DUGGAN, Justice.

The jury found appellant, Ronnie Miller, guilty of the Class C misdemeanor [1] of gambling, and the trial court assessed punishment at a $200 fine. In six points of error, appellant argues that: (1) the evidence was insufficient to support a finding of guilty; (2) the controlling statutory provisions, Tex.Penal Code Ann. § 47.02(b)(2), (3) (Vernon 1973), are unconstitutionally vague; (3) the trial court erred in admitting the testimony of Kevin Templeton; (4) the trial court erred in admitting irrelevant evidence, the cumulative effect of which was to contribute to appellant's conviction; (5) the trial court erred in denying appellant's motion to dismiss for selective prosecution; and (6) the trial court erred in excluding testimony on whether appellant knew he was playing in a game of craps that did not satisfy the requirements of section 47.02(b). We affirm.

On November 14, 1990, appellant, the sheriff of Brazos County, went to a location known as the "lake house," bought $20 worth of chips, and played craps. At trial, the only disputed issue was whether appellant's actions complied with the "social gambling"

---

1. This case originated in the justice court, having jurisdiction over Class C misdemeanors. Tex. Const. art. V, sec. 19; Tex.Code Crim.P.Ann. art. 4.11 (Vernon Pamph.1994). On appeal from the justice court, the county court tried the case de novo. Tex. Const. art. V, sec. 16; Tex.Code Crim. P.Ann. art. 4.08 (Vernon Pamph.1994).

defense[2] provided by section 47.02(b):

It is a defense to prosecution under this section that:

(1) the actor engaged in gambling in a private place;

(2) no person received any economic benefit other than personal winnings; and

(3) except for the advantage of skill or luck, the risks of losing and the chances of winning were the same for all participants.

## Constitutionality of the Gambling Statute

As a threshold issue, we will first consider appellant's constitutional complaint contained in his second point of error. Appellant argues that section 47.02(b)(2) is unconstitutionally vague because (1) "economic benefit" is not defined in terms of value or amount, and (2) the time when "economic benefit" is "received" is not specified. He argues that section 47.02(b)(3) is unconstitutionally vague because the phrase "the risks of losing and the chances of winning were the same for all participants" is not defined and is incapable of comprehension. He contends that this vagueness results in arbitrary and discriminatory enforcement by the police, and impermissibly delegates enforcement to the police, district attorneys, grand juries, and juries on an ad hoc and subjective basis.

■ In examining a criminal statute for vagueness, the inquiry is whether the ordinary, law-abiding individual would have received sufficient information that his or her conduct risked violating a criminal law. *Bynum v. State*, 767 S.W.2d 769, 773 (Tex.Crim.App.1989).

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws

may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnotes and citations omitted).

■ If first amendment rights are not involved, we need only scrutinize the statute to determine whether it is impermissibly vague as applied to appellant's specific conduct. *Bynum*, 767 S.W.2d at 774. A statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. *Id.* (citing *Engelking v. State*, 750 S.W.2d 213 (Tex.Crim.App.1988)). Instead, the words or phrase must be read in the context in which they are used and construed according to the rules of grammar and common usage. Tex. Gov't Code Ann. § 311.011(a) (Vernon 1988).

We first consider appellant's vagueness challenge of the section 47.02(b)(2) phrase "received any economic benefit" in relation to the facts before us. Appellant argues that "economic benefit" is vague because the act does not define a value or amount, and that "received" is vague because it fails to specify the time when the economic benefit must be received.

Although "economic benefit" is not defined in the Penal Code, "benefit" is defined in Tex. Penal Code Ann. § 1.07(a)(6) (Vernon Pamph.1994) as "anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested." It is true that the plain language of sections 47.-02(b) and 1.07(a)(6) do not define a value or amount. However, the failure to define a

---

**2.** While section 47.02(a) prohibits gambling (making bets), section 47.02(b) "provides a defense ... for the social gambler...." Searcy &

Patterson, Practice Commentary, Tex.Penal Code Ann. § 47.02 (Vernon 1989).

value, amount, or time period does not necessarily render the statute unconstitutionally vague.

The commentary following section 47.02 states:

The elements of the defense in Subsection (b) are designed to exclude any form of exploitative or commercialized gambling.... therefore, if one party gets a special cut from each pot or charges for the privilege of using the facilities, none of the participants can rely on the defense.

Searcy & Patterson, Practice Commentary, Tex. Penal Code Ann. § 47.02 (Vernon 1989).

■ We believe that in the context of the craps games played by appellant, "any economic benefit" would certainly include the sharing of profits by the owner of the house (also acting as "the house") and his partner. Similarly, "received" would always include the time period the craps game was being played. Because we must scrutinize the statute to determine whether it is impermissibly vague as applied to appellant's specific conduct, we need not consider a time period before or after the craps game. It is not necessary to define a specific amount or a time period for appellant to have sufficient warning that if any person "received" an "economic benefit" other than personal winnings, participation in the craps game would violate the statute.

The evidence at trial supports this conclusion. Todd Chapman testified that although he was not playing the craps game with appellant, he had an agreement with L.A. Ford to split the profits from the games 50/50. (Ford was the owner of the lake house and acted as "the house" during the games; Chapman was Ford's partner.) Chapman further testified that everyone at the games knew about the partnership. Moreover, Chapman and Ford did in fact split the profits of the craps game played by appellant. We find this testimony sufficient to show that appellant had fair warning that while he played craps, Chapman received economic benefit other than personal winnings.

■ We next consider appellant's vagueness challenge to the section 47.02(b)(3) phrase "the risks of losing and the chances of winning were the same for all participants" in relation to the facts before us. The commentary following section 47.02 states:

If the "odds" of the game are stacked in favor of one party, Subsection (b)(3) excludes the defense. However, the equal risks and chances requirement of Subsection *(b)(3) refers only to the rules of the game,* not to the advantages that accrue to a skilled player. Therefore, a game that ensures a percentage to the house or banker, regardless of the luck or skill involved, is not a "friendly" game to which the defense applies; but the presence of a superior, even professional player, who relies on skill and luck, does not vitiate the defense.

Searcy & Patterson, Practice Commentary, Tex. Penal Code Ann. § 47.02 (Vernon 1989) (emphasis added).

Again, we turn to the evidence at trial and consider if appellant had fair warning about whether the "risks of losing and the chances of winning were the same for all participants" under the rules of the craps game.

Mr. Weido testified about the basic game of craps. There are two players, a shooter who rolls the dice, and a fader who bets against the shooter. Three possibilities result from the first roll. First, if the shooter rolls a seven or 11, the shooter wins. Second, if he rolls a two, three, or 12, the fader wins. Third, if he rolls any other number, the shooter's point is established. When a point is established, the shooter then continues to roll. On the following rolls, if the shooter rolls his point before he rolls a seven, he wins; if he rolls a seven before he makes his point, the fader wins.

Out of the 36 possible combinations of the dice, the seven will appear more than any other number because there are six ways for it to occur; conversely, there are two ways for the 11 to occur. Therefore, on the first roll, the shooter has a total of eight chances out of 36 to win, a total of four chances out of

36 to lose, and a total of 24 chances out of 36 to make a point. On the same roll, the fader has four chances to win, eight chances to lose, and 24 chances that the shooter will make a point. The first roll is the only roll where the shooter has a greater chance to win than the fader. After the first roll, the fader always has the statistical advantage.

In addition to these basic rules, which apply to all craps games and which only address the risks of losing and the chances of winning in a statistical manner, L.A. Ford had other rules he imposed on the participants of the craps game played by appellant. While appellant was playing, Ford acted as the fader and as "the house." Mr. Weido testified that on "hard-way" bets, Ford set five to one odds on the amount "the house" would pay the winners. A "hard-way" bet can only be made when the shooter is attempting to make his established point, and that point is four, six, eight, or 10. The "hard-way" player is betting that the shooter will roll doubles to make his point. For example, if the shooter is attempting to roll a six, only the combination of double threes will result in a win for the "hard-way" bet. Again, this must occur before a seven is rolled. In this example, because there are six chances to roll a seven, and four chances to roll a six (other than by double threes), the chances of winning this bet are 10 to one. Weido stated that Ford, acting as "the house," only paid out five to one.

Weido testified that to participate in Ford's game, the players had to abide by his rules. We believe these rules clearly indicate that while appellant played craps, the risks of losing and the chances of winning were not the same for all participants. From the plain language of the statute, appellant had fair warning of the prohibited conduct.

Similarly, we find that sections 47.02(b)(2) and 47.02(b)(3) provide sufficient guidance to law enforcement authorities so that arbitrary or discriminatory enforcement is not permitted. For enforcement purposes, law enforcement authorities could observe: (1) the receipt of economic benefit other than personal winnings, and (2) whether "the house" payout odds set by Ford gave him an inherent advantage.

 Statutes are vested with a presumption of validity and must be construed in such a way as to uphold their validity. *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim. App.1979). A statute that is arguably vague may be given constitutional clarity by applying the standard rules of statutory construction. *Engelking,* 750 S.W.2d at 215. Although the legislature could have been more specific, we find these sections nonetheless incorporate a comprehensible standard of conduct. *See Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971); *Lear v. State,* 753 S.W.2d 737, 739 (Tex.App.—Austin 1988, no pet.).

Accordingly, neither section 47.02(b)(2) nor section 47.02(b)(3) is unconstitutionally vague as applied to appellant's conduct. We overrule point of error two.

### Sufficiency of Evidence

Appellant claims that the State failed to disprove the social gambling defense. In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This Court may not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). If there is evidence that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of evidence grounds. *Id.; Glass v. State,* 761 S.W.2d 806, 807 (Tex.App.—Houston [1st Dist.] 1988, no pet.). The jury, as trier of fact, is the sole judge of the credibility of witnesses, *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159

(1988), and may believe or disbelieve all or any part of a witness's testimony. *Id.* at 614; *Smith v. State,* 789 S.W.2d 419, 420 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). A jury may believe a witness even though his testimony is contradicted. *Sharp,* 707 S.W.2d at 614.

To prove appellant illegally gambled, the State had to show one of the following:

(1) that the gambling did not occur in a private place; or

(2) that persons received some economic benefit other than personal winnings; or

(3) that except for the advantage of skill or luck, the risks of losing and the chances or winning were not the same for all participants.

■ The most compelling evidence was presented in connection with the second requirement. Todd Chapman testified that pursuant to an agreement with L.A. Ford, he paid $13,000 to participate 50/50 in the profits from the games at the lake house. Appellant argues that if, after the game, Chapman and Ford privately divide Ford's winnings, it cannot retroactively invalidate the game. He claims that the division must occur at the table during the game played by appellant. We believe Chapman did receive an economic benefit at the table during the game played by appellant. The agreement to split profits was connected with each roll of the dice in each game played that night; half of the winnings were Chapman's although he did not play in the games.

Appellant ignores the plain language of the statute, that no person receive any economic benefit other than personal winnings. It does not provide an amount of economic benefit or a time period for the receipt of an economic benefit.

Because this agreement represents sufficient evidence[3] for a rational fact finder to find against appellant on the second element of the gambling defense beyond a reasonable doubt, we need not address the first or third elements. We overrule point of error one.

### Testimony of Kevin Templeton

■ In point of error three, appellant argues that the trial court erred in admitting the testimony of Kevin Templeton as an expert because the testimony determined ultimate fact issues that could only be found by the jury. Templeton testified about the rules of craps, whether there was an economic benefit other than personal winnings, and whether the risks of losing and the chances of winning were the same for all participants.

■ The decision to allow a witness to testify as an expert is committed to the sound discretion of the trial court. *Duckett v. State,* 797 S.W.2d 906, 910 (Tex.Crim.App. 1990). The threshold determination for admitting expert testimony is whether the specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. *Id.;* TEX. R.CRIM.EVID. 702. While expert testimony should not be excluded merely because it encompasses or embraces an "ultimate issue" or fact, such evidence may not decide that fact or issue for the jury. *Duckett,* 797 S.W.2d at 914.

While we agree that Templeton's testimony encompassed ultimate fact issues, we disagree that it should have been excluded. His specialized knowledge of the rules of craps assisted the trier of fact to understand the evidence and to determine facts in issue. Without understanding the rules of craps and how the game is normally played, it would be difficult for the average juror to make a determination about whether there was economic benefit or whether the risks of losing and the chances of winning were the same

---

**3.** The State also presented Weido's testimony that while appellant was playing the craps game, Weido tipped a waiter a chip for bringing free drinks to the players. Weido further testified that while appellant was playing the craps game, Weido gave John LeFlore, a deputy sheriff watching the game, a $25 chip, and that LeFlore then used it to gamble. Because we find the Ford/Chapman partnership agreement to be sufficient evidence to support the jury finding, we need not consider whether players giving chips to non-players would constitute sufficient evidence to support a conviction.

for all participants. Further, the trial court carefully excluded testimony about Templeton's legal interpretation of the statute.

The trial court did not abuse its discretion by allowing Templeton to testify about these facts. We overrule point of error three.

## Cumulative Error

In point of error four, appellant contends that the trial court erred in admitting irrelevant evidence, the cumulative effect of which contributed to his conviction. Over appellant's objections, the trial court admitted:

1. two cases of poker chips,

2. a bag of poker chips,

3. numbers written on the dice table, and

4. testimony concerning 30–40 decks of cards, football schedules, a shotgun, a dealing shoe, and a plastic discard holder.

Appellant contends that to get a conviction, the State had to show a casino and try the activity at the lake house, rather than the conduct of appellant. He claims that the evidence was prejudicial and had little or no probative value on the conduct of appellant.

■ However, appellant ignores that the State had to introduce evidence showing that the lake house was not a private place in order to disprove one of the elements of the defense. The evidence must be relevant to a contested fact or issue to be admissible, and that determination is within the sound discretion of the trial judge. *Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App.1979). That decision will not be reversed on appeal unless a "clear abuse of discretion is shown." *Werner v. State,* 711 S.W.2d 639, 643 (Tex.Crim. App.1986).

We find that the evidence tended to show the jury (1) whether or not the lake house was a private place, and (2) the context of appellant's activities. We overrule point of error four.

## Selective Prosecution

In point of error five, appellant argues that the trial court erred in denying his motion to dismiss for selective prosecution. Appellant, a Republican, argues that he was prosecuted because of his refusal, in the fall of 1990, to endorse a fellow Republican in his efforts to run against a sitting Democratic judge. He claims that Bill Turner, a Democrat and the district attorney during the fall of 1990, asked appellant to support the Republican judicial candidate. He claims that his refusal to endorse the Republican candidate caused Turner to selectively prosecute him for gambling.

■ To prevail on the motion, appellant must first make a prima facie showing that the State has singled him out for prosecution while others similarly situated and committing the same acts have not. *United States v. Greene,* 697 F.2d 1229, 1234 (5th Cir.), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). In the case before us, twenty-four other participants at the lake house were not prosecuted for gambling. Presuming that this is sufficient to meet the first part of the test, we address the second part by examining the reasons why appellant, and not others, were prosecuted.

■ Appellant must show that the State's discriminatory selection of him for prosecution has been invidious or in bad faith in that it rests upon such impermissible grounds as race, religion, or the desire to prevent his exercise of constitutional rights. *Greene,* 697 F.2d at 1234. The mere exercise of some selectivity by the government in instituting prosecutions is not itself a constitutional violation. *Greene,* 697 F.2d at 1234. It has been held that

selection for prosecution based in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with the tax laws. Since the government lacks the means to investigate every suspected violation of the tax laws, it makes good sense to prosecute those who will receive, or are likely to receive, the attention of the media.

*United States v. Catlett,* 584 F.2d 864, 868 (8th Cir.1978). *See also United States v.*

**916**

Ness, 652 F.2d 890, 892 (9th Cir.1981); *United States v. Johnson,* 577 F.2d 1304, 1309 (5th Cir.1978).

■ No other participants at the lake house were similarly situated as appellant, the sheriff of Brazos County. Further, the district attorney has a duty to present to the grand jury any information of official misconduct by an officer. TEX.CODE CRIM.P.ANN. art. 2.03 (Vernon 1977). We find that appellant fails to meet the second part of the test because the State had legitimate reasons to only prosecute appellant. We overrule point of error five.

### Exclusion of Evidence Regarding Knowledge

■ In appellant's sixth point of error, he claims the trial court erred in excluding testimony on whether appellant knew he was playing in a game of craps that did not satisfy the requirements of section 47.02(b). Appellant sought to introduce evidence of his belief that the games at the lake house were legal, i.e., that he did not "knowingly" violate the gambling statute.

The excluded testimony would have shown that upon inquiry of various people, including the district attorney and certain Texas Department of Public Safety officers, appellant was told through his years as sheriff that if there was no cutting of the pot and no cheating, then the games were legal. Appellant argues that because he was mistaken about the facts surrounding the game of craps at the lake house, the evidence should have been admitted to support a mistake of fact defense.

The witnesses testified to conversations appellant had with them over a five-year period. None of the excluded testimony related to appellant being mistaken about facts of the games occurring at the lake house on November 14, 1990. We have already decided there was sufficient evidence for the jury to infer that appellant knew Ford and Chapman were sharing the profits or cutting the pot. The trial court did not abuse its discretion by excluding the testimony. We overrule point of error six.

We affirm the trial court's judgment.