

# NUMBER 13-08-247-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BRIAN KEITH ENLOE,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                   Appellee.

### On appeal from Criminal District Court No. 7
### of Dallas County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Vela

Appellant, Brian Keith Enloe, was indicted for the offense of burglary of a building, a state-jail felony. *See* TEX. PENAL CODE ANN. § 30.02(a)(1), (c)(1) (Vernon 2003). Following a jury trial, appellant was convicted, and after pleading true to two prior felony convictions, the jury assessed punishment at ten years' imprisonment. By three issues,

appellant complains the trial court erred in admitting State's exhibit 10 into evidence, the limiting instruction pertaining to State's exhibit 10 was insufficient, and the evidence was factually insufficient to prove intent to commit theft. We affirm.[1]

## I. Factual Background

Edward Trejillo and his brother, Tino, lived in Dallas with their parents, Bastino and Francis Trejillo. Their house had a detached garage with pecan trees around it. About 10:45 p.m. on December 16, 2007, Edward was in the house when he heard a noise like someone was "stepping on the leaves and the pecans at the same time." He looked outside and saw the garage was halfway open and that somebody with a flashlight was in the garage, looking for something. Upon seeing the intruder, Tino called the police.

Officers Helm[2] and Meyers were dispatched to the Trejillo residence. Officer Meyers saw that the Trejillo's garage was "slightly open. Open enough to where a person could slide under there . . . and gain access that way." While both officers were outside the garage, Officer Helm told the intruder, who was still in the garage, "'This is the Dallas Police Department, come out, crawl out.'" The intruder, wearing gloves, crawled out of the garage and was arrested at the scene. Officer Meyers testified that inside the garage, he "found numerous items kind of piled up, or it looked like they were about to be piled up." He saw a tackle box with a hedge trimmer on top of it. A little further in the garage, he saw a black gun case containing a .22 rifle. Outside the garage, there were two shovels and a rake. Officer Meyers testified that "It looked like the defendant was piling up evidence

[1]This appeal was transferred to this Court from the Fifth Court of Appeals by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 22.220 (Vernon 2004) (delineating the jurisdiction of appellate courts); TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005) (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2]Officer Helm did not testify during the trial of this case.

in a centralized location in the garage, at the exit point for where he was going to exit, to access the property in a quick manner, go through the garage. And this is common with burglaries. . . ." That night, Officer Meyers inventoried everything that appellant had on his person, which included a roll of plastic trash bags,[3] a utility knife, a pocket knife, and wire cutters. Officer Meyers testified that these items are commonly used in burglaries. Appellant also had two flashlights and a screwdriver. Officer Meyers identified appellant as the person who crawled out of the Trejillo's garage.

On cross-examination, Officer Meyers testified that he did not find any signs of forced entry and that trash bags are used to keep people warm and dry. He believed the weather was cold at the time of this offense. He had no prior knowledge with respect to what the garage looked like before he went into the garage.

After appellant crawled out of the garage, Edward Trejillo looked through the garage and saw that various items that were in the garage were either taken out of the garage or had been moved to the front of the garage where they could be easily taken out. He stated that "the lawnmower's arms[4] were folded like he [appellant] was going to put it over the fence, and the tackle box was up in the front, which the tackle box and the rifle were in the back of the garage." When the prosecutor asked Edward, "And did y'all ever put that bar, that handlebar, I guess, of the lawnmower down?", he replied, "No, sir." He testified that the handlebar was down when he went into the garage. He believed that the tackle box normally sat in the corner of the garage; however, he found it in the front of the garage by

---

[3]When the prosecutor asked Officer Meyers, "And in your experience, what are these [trash bags] used for in a burglary?", he replied, "Containment of property, vast amounts of property, and an easy way of transportation."

[4]Edward testified that the lawnmower's "arms were folded down like if you're going to put it in the trunk, you fold the arms down, so that way you can put the trunk down."

3

the lawnmower and the edger. He said that a rifle that had been in the garage on top of an old TV set was moved where the mower and tackle box were found. A hedge trimmer, which usually sat on top of a mattress, was moved up front with the tackle box and lawnmower. Rakes and shovels, which had been in the garage, were "tossed over to the neighbor's yard."

On cross-examination, he testified that the inside of the garage was not kept in an orderly fashion. He said that the tackle box and rifle belonged to Tino and that he did not know when Tino last used these items. Edward had not used the hedge trimmer or the lawnmower since October.

Bastino Trejillo, the owner of the garage, testified that his garage was not open to the public and that he did not give appellant permission to go inside his garage and take anything from him. He said that the person arrested at the scene was the same person who was in his garage. On cross-examination, he did not know if anyone had removed items from his garage. His sons, Edward and Tino, were mostly responsible for the garage and the items inside it.

Tino Trejillo testified that prior to the incident, he had not been in the garage for "a couple of months." He stated that he did not place either his tackle box or his rifle in the front of the garage.

Francis Trejillo testified that prior to the incident, she had not been in the garage for "a couple of years." However, she did not move anything up to the front of the garage.

The defense rested without calling any witnesses at the guilt-innocence phase.

4

II. Discussion

A. *Admission of Evidence*

In his first issue, appellant argues the trial court abused its discretion by admitting State's exhibit 10 into evidence. During the guilt-innocence phase, the prosecutor offered into evidence State's exhibit 10, which included a utility knife, a pocket knife, and wire cutters. These items were found on appellant after he was arrested at the scene. Defense counsel objected to the admission of State's exhibit 10 on the basis that Texas Rule of Evidence 403 prevented admission of these items because they were not probative of the offense, but instead were highly prejudicial. Counsel also objected that the pocket knife was inadmissible character evidence under rule 404(b). The trial court overruled the objections but on counsel's request, gave the jury a limiting instruction:

> This is potential evidence of consciousness of guilt of the defendant, and/or instrumentalities used to assist the defendant to accomplish whatever he was trying to accomplish that night. It is not to be taken by the jury as any kind of evidence that he intended to use any of those things for any sort of vile purpose.

1. *Standard of Review*

We review a trial court's decision to admit evidence over objection under an abuse-of-discretion standard, and we will not reverse that decision absent a clear abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). The abuse-of-discretion standard applies to questions of the admissibility of evidence under rules 402-404 of the Texas Rules of Evidence. *Brimage v. State*, 918 S.W.2d 466, 506 (Tex. Crim. App. 1996). A trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement. *McCarty,* 257 S.W.3d at 239. We must uphold the trial court's evidentiary ruling if it is correct under any applicable theory of law. *Trevino v. State*, 991 S.W.2d 849, 853 n.5 (Tex. Crim. App. 1999). This is true even when the trial court gives

5

the wrong reason for its decision. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

### 2. *Analysis*

#### a. *Relevancy of State's Exhibit 10*

Rule 401 of the Texas Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible." TEX. R. EVID. 402. "It is important, when determining whether evidence is relevant, that courts examine the purpose for which the evidence is being introduced." *Layton v. State*, No. PD-408-07, 2009 WL 250080, at *4 (Tex. Crim. App. Feb. 4, 2009) (citing *Moreno v. State*, 858 S.W.2d 453 (Tex. Crim. App. 1993)). "It is critical that there is a direct or logical connection between the evidence and the proposition sought to be proved." *Id*.

Here, the testimony showed that appellant did not possess any of the Trejillos' property when he was arrested. Even though various items in the garage were moved to the front of the garage and other items were removed from it, no one testified that appellant moved any of these items. However, Officer Meyers testified that the pocket knife, utility knife, and wire cutters were commonly used for burglaries. Thus, the State's purpose for introducing these items was to show appellant's intent. In other words, appellant's possession of the items tended to show his intent to commit the offense of burglary and therefore assisted the jury in drawing an inference that he entered the garage with the intent to commit theft. *See* TEX. R. EVID. 401; *see also Bordelon v. State*, 683 S.W.2d 9,

6

12 n.3 (Tex. Crim. App. 1985) ("[P]ossession of burglary tools is admissible in burglary cases as a circumstance from which it may be inferred that such tools *were used to commit the primary offense*.") (emphasis in original).

b. *Rules 403 and 404*

Evidence of extraneous offenses is generally not admissible. TEX. R. EVID. 404(a).[5] However, rule 404(b) allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity. TEX. R. EVID. 404(b);[6] *Carter v. State*, 145 S.W.3d 702, 707 (Tex. App.–Dallas 2004, pet. ref'd). Evidence of other crimes, wrongs, or acts may be admissible to prove identity or intent, to establish motive, or to show opportunity or preparation. TEX. R. EVID. 404(b); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

Although admissible under rule 404(b), evidence may still be excluded under rule 403 if the danger of unfair prejudice substantially outweighs its probative value. TEX. R. EVID. 403;[7] *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). The court of criminal appeals has explained that the term "unfair prejudice"

---

[5]Rule 404(a) provides, in relevant part: "Evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion. . . ." TEX. R. EVID. 404(a).

[6]Rule 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b).

[7]Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless preparation or cumulative evidence." TEX. R. EVID. 403.

refers not to an adverse or detrimental effect of evidence but to an undue tendency to suggest a decision on an improper basis, commonly an emotional one. Unfair prejudice does not arise from the mere fact that evidence injures a party's case. Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it. Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence. The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant.

*Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007) (citations omitted).

"Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006); *Brimage,* 918 S.W.2d at 505. "Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Brimage,* 918 S.W.2d at 506. A proper rule 403 "analysis includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005); *Arroyo v. State*, 259 S.W.3d 831, 837 (Tex. App.–Tyler 2008, pet. ref'd).

Considering the rule 403 factors, State's exhibit 10 was probative because it showed appellant's intent as well as the context and circumstances of his actions. *See Jackson v. State*, 575 S.W.2d 567, 570 (Tex. Crim. App. 1979) ("The facts and circumstances surrounding the commission of an offense are admissible to prove the guilt of the accused."); *Miller v. State*, 874 S.W.2d 908, 915 (Tex. App.–Houston [1st Dist.] 1994 pet. ref'd) (holding poker chips and other physical evidence were relevant and admissible to prove defendant's gambling activities). We further note that the State spent relatively little

time developing this evidence as opposed to the total amount of time devoted to its case-in-chief. We are also not persuaded that the evidence had a tendency to suggest a decision on an improper basis or that it impressed the jury in an irrational way. And although appellant claims the risk of unfair prejudice substantially outweighs the probative value of the evidence, he fails to point out in what way the evidence was improper. We hold the trial court did not abuse its discretion by admitting State's exhibit 10 into evidence. We overrule the first issue.

B. *Limiting Instruction*

In his second issue, appellant argues the trial court's limiting instruction was insufficient to lessen the prejudicial impact of the admission of State's exhibit 10. "To preserve error, a complaining party must make a timely and specific request, objection, or motion and obtain an express or implied ruling on that request, objection, or motion." *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008) (citing *Gauder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003)). Here, an objection was not made to the limiting instruction. Consequently, appellant has failed to preserve this argument for review. *See id*. Issue two is overruled.

C. *Sufficiency of the Evidence*

In issue three, appellant argues the evidence is factually insufficient to prove he intended to commit theft. In reviewing a factual sufficiency claim, we review the evidence in a neutral light rather than the light most favorable to the verdict. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007) (citing *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000)). Evidence is factually insufficient if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust, or if the supporting evidence is

outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Neal*, 256 S.W.3d at 275; *Roberts*, 220 S.W.3d at 524 (citing *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). We do not reverse for factual insufficiency if the greater weight and preponderance of the evidence actually favors conviction. *Neal*, 256 S.W.3d at 275; *Roberts*, 220 S.W.3d at 524 (citing *Watson*, 204 S.W.3d at 417).

1. *Applicable Law*

Appellant was convicted under penal code section 30.02, which provides in part: "(a) A person commits an offense if, without the effective consent of the owner, the person: (1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault[.]" TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2003). The intent to commit theft must exist at the moment of the entry or there is no offense under section 30.02(a)(1). *DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988). The offense is complete upon the entry; a completed theft is unnecessary. *Id*. Proof of the intent to commit theft is a necessary element of the State's case. *Id*.

Appellant argues the evidence is insufficient because there was no proof of intent to commit theft. In a burglary case, the accused's subjective, specific intent is rarely evident from direct proof. *Fugate v. State*, 709 S.W.2d 29, 30 (Tex. App.–Corpus Christi 1986, no pet.). "As a question of fact for the jury, however, intent may be inferred from the surrounding circumstances." *LaPoint v. State*, 750 S.W.2d 180, 182 (Tex. Crim. App. 1988), *disapproved of on other grounds by Warner v. State*, 245 S.W.3d 458 (Tex. Crim. App. 2008); *Simmons v. State*, 590 S.W.2d 137, 138 (Tex. Crim. App. 1979); *Macias v. State*, 704 S.W.2d 484, 486 (Tex. App.–Houston [14th Dist.] 1986, no pet.); *accord*

10

*Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant."). A "presumption of an intent to commit theft arises from the nonconsensual nighttime entry of a home or building." *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003); *Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982). When a defendant possesses burglary tools, the fact finder may infer that the defendant was going to use those tools to commit a theft. *See Bordelon,* 683 S.W.2d at 12 n.3.

2. *Analysis*

A rational jury could have determined the following from the evidence: (1) appellant was inside the garage at nighttime; (2) appellant was using a flashlight and appeared to be looking for something; (3) prior to appellant's entry into the garage, various items of property were in their usual places; however, after appellant left the garage, these items were moved to the front of the garage; (4) after appellant was arrested at the scene, he had a pocket knife, utility knife, and wire cutters, all of which were commonly used in burglaries; (5) two shovels and a rake were found over the fence; and (6) appellant did not have consent to enter the garage, which was not open to the public.

The contrary evidence showed: (1) no one saw appellant move any items inside the garage or take any items from the garage; (2) the plastic bags which appellant had in his pocket could have been used to keep him warm and dry; (3) appellant did not attempt to flee; and (4) appellant did not have any of the Trejillo's property on his person.

Viewing the evidence neutrally, we conclude the evidence is not so obviously weak that the verdict seems "clearly wrong and manifestly unjust" or that proof of guilt is against the great weight and preponderance of the evidence to show, beyond a reasonable doubt, that appellant entered the garage with the intent to commit theft. *See Watson*, 204 S.W.3d

11

at 414-15, 417; *Johnson*, 23 S.W.3d at 11.  Accordingly, we hold the evidence is factually sufficient to support appellant's conviction.  *See Mauldin,* 628 S.W.2d at 795.[8]  We overrule the third issue.

III. Conclusion

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 19th day of March, 2009.

---

[8]In *Mauldin v. State*, 628 S.W.2d 793 (Tex. Crim. App. 1982), a warehouse supervisor, Horace West, arrived at the warehouse about 4:30 a.m. and saw the defendant being brought out of the warehouse by police.  *Id*. at 794.  Upon entering the warehouse, West saw "papers scattered about and a number of calculators, a radio, and other office equipment removed from their usual places and stacked upon desks and chairs."  *Id*.  The defendant was found inside the building on top of a "tier of shelves."  *Id*.  On appeal, the defendant contended the evidence was insufficient to sustain his conviction for burglary of a building because there was no proof of intent to commit theft.  *Id*. at 794-95.  The court of criminal appeals stated:  "In a prosecution for burglary, the intent to commit theft may be inferred from the circumstances."  *Id*. at 795 (citing *Simmons v. State*, 590 S.W.2d 137 (Tex. Crim. App. 1979)).  "Further, an entry made without consent in the nighttime is presumed to have been made with intent to commit theft."  *Id*. (citing *Moss v. State*, 574 S.W.2d 542 (Tex. Crim. App. 1978); *Solis v. State*, 589 S.W.2d 444 (Tex. Crim. App. 1979)).  The court held that the defendant's "entry into the building having been made in the nighttime without the consent of the owner is sufficient to show an intent to commit theft."  *Id*.